## JACKSON, STONE *et als. v.* THE FEATHER RIVER AND GIBSONVILLE WATER CO.

It has been the practice of the Supreme Court to examine the case only upon the errors assigned by the Appellant, and not to look into the exceptions taken by Respondent.

A bill of sale of a mining claim is sufficiently proved when the handwriting of the subscribing witness, who is absent from the State, and the execution by the

Jackson v. Feather River Water Co.

vendor, is proven. And this, though the subscribing witness was in the State after suit instituted, and near the time of trial, and plaintiff used no efforts to get the testimony of the witness before he left the State.

It is no objection to such bill of sale that it is not under seal, whatever may be the effect of it as evidence.

Upon questions as to the occupancy of public mineral land, it seems that a transfer of the occupant's right of possession may as well be by simple agreement as by deed, the vendee taking possession.

Complaint gives a general description of mining claims. The execution of a bill of sale of the claims having been proven, plaintiff offers the paper in evidence, defendant objecting, that the identity of the claims in the paper with the claims in the complaint should first be shown. *Held*, that the paper was admissible, as also further proof to locate the claims if requisite. And, further, that the Court will not control the order of proof, unless some injury will be done.

Cross-examination cannot go beyond the subject matter of the evidence in chief, but should be allowed a very free range within it.

Action for damages to a mining claim by overflow and leakage from defendant's ditch. To question by plaintiff to one of his witnesses, " Did you see water splashing over the flume ?" he answered, " Yes." Defendant, on cross-examination, proposed to ask, " Whose water was that you saw splashing over the flume ?" *held*, that the [question was proper, even though it went to the *ownership* of the water.

That the overflow, or leakage, was occasioned, not by the acts or negligence of the defendants, but by the acts or negligence of another, was matter of denial simply, not new matter of defense, to be proved only when defendants opened their case.

When defendant, on cross-examination of plaintiffs' witness, simply aims to disprove, by the witness, the very case the witness himself has made, the rule of excluding such evidence until defendant opens, has no application.

Every error in the Court below, in the rejection of evidence, is *prima facie* an injury, and it rests with the other party clearly to show that no hurt *could have been*, or was done, by the error.

APPEAL from the Fourteenth District.

The opinion of the Court shows the points of appeal. The pleadings were verified. The jury found damages for plaintiff, one thousand two hundred and ninety dollars. Judgment accordingly and defendants appeal.

*McConnell & Niles*, for Appellants.

1. The Court erred in admitting in evidence the bill of sale marked " Exhibit 2," because its execution was not proved by the subscribing witness. If the witness can be had he must be had. (1 Greenl. Ev. Sec. 569 ; *Call* v. *Dunning*, 4 East, 54 ; *Manners* v. *Parten*, 4 Esp. 240 ; *Doe ex dem. Sir F. Sykes* v. *Durnford*, 2 Maule & Selwyn, 62 ; 2 Stark. 180 ; 6 Binn. 16 ; *McMahan* v.

*McGrady*, 5 Serg. & Rawle, 315; *Abbott et als.* v. *Plumbe*, 1 Doug. 216; *Barnes* v. *Tromponsky*, 7 Tenn. 265.)

Even when the subscribing witness is beyond the jurisdiction of the Court, or dead, the execution of the paper should be proved by proof of his handwriting, and not by direct evidence; as, for instance, by the party himself. (S. C. 7 Tenn. 266, Note C; *Rex* v. *Harring*, 4 Maule & Selwyn, 351; 2 East, 184—187; *Fox* v. *Reid*, 3 Johns. 476; *Wall* v. *Phelps*, 2 Johns. 451; *Hollinbeck* v. *Fleming*, 6 Hill, 304.)

In order to lay a foundation for secondary proof it is essential that the party should use due diligence in endeavoring to procure the attendance of subscribing witnesses, or procuring their depositions. (1 Greenl. Ev. Secs. 574, 558.)

After proving the absence or death of the witness, etc. the next proof in order, is proof of his handwriting. (Id. Sec. 575.)

2. The so called bill of sale contains no description of the premises sold, and was, perhaps, void for uncertainty. (1 Green. Ev. Sec. 301; *Boardman* v. *Reed & Lord's Lessees*, 6 Peters, 328, 345.)

Granting, however, that such was not the case, but that on the principle, *id certum est quod certum reddi potest*, it was a valid instrument, the plaintiffs who introduced it were bound to give it certainty by proof that it covered the injured claims. (1 Green. Ev. Secs. 297, 300; and cases cited.)

3. The so called bill of sale was not under seal. Therefore, it did not pass the legal estate, which remained as yet in Huntoon & Co. (*Clark* v. *McElvey et al.* 11 Cal. 154.)

This action was brought for injuries to mining claims. The owner alone can recover. They might have been content to prove their ownership by proving their possession. But they did not rely on possession, but on this bill of sale, and by means of it, established the legal title, and consequently the possession, out of themselves and in Huntoon & Co. Hence, this instrument, having no tendency to prove plaintiffs' case, should have been rejected. Even if the instrument showed an equity in favor of plaintiffs, it could not avail, because this is an action at law.

4. The question proposed to be put to the witness, Gerslin, was proper. (*Boswell et als.* v. *Laird et als.* 8 Cal. 469; *Wolfe* v.

*St. Louis In. W. Co.* 10 Id. 541; *Wright* v. *Wilcox*, 19 Wend. 343; Notes to *Ashly* v. *White*, 1 Smith's L. Cas. 264, 269; *Thornburgh* v. *Hand*, 7 Cal. 565; 1 Green. Ev. Secs. 445, 455; and cases.)

*Vanclief & Stewart*, for Respondents.

I.   The first error assigned by Appellant is the admission in evidence of "Exhibit, No. 2." It was not necessary to inquire into the situation, boundaries, and extent, of the claims, simply for the purpose of identification. The bill of sale itself describes the claims conveyed by a well known name, to wit: "Huntoon & Co.'s Claims;" and, besides, the latitude asked was not proper on cross-examination. But, if there were error in refusing to allow the cross-examination, proposed by defendants, (which we deny,) the whole matter was gone into by the subsequent minute examination of the witness, Kimball.

II.   The bill of sale, No. 1, was legally proved, and need not be under seal. It conveys an equitable interest, at least, and shows that plaintiffs were rightfully in possession of the claims injured.

III.   The Court properly refused to allow defendants to show that the water running in the flume, belonged to the Whisky company, to rebut the *prima facie* case made by plaintiffs, because this being the main defense to the action, was not admissible on cross-examination. (1 Greenl. Sec. 447.)

Besides, it is questionable, whether the defendants would be allowed, while they had the control of the flume, to show that the water flowing in it and injuring third parties, was the property of another.

BALDWIN, J. delivered the opinion of the Court—TERRY, C. J. concurring.

1. We do not see in the Respondent's brief any notice of the point argued by the Appellant, that this Court should look into, and determine this case in reference to the exceptions taken by Respondent. It is not necessary for us to consider that point. Our practice, however, has been to look only to the errors assigned by the Appellant.

2. On the trial of this case, which was for injury sustained by

the owners of mining claims by the defendants' ditch, several technical questions arose.

The plaintiffs offered to introduce two bills of sale to the premises injured—one made by Huntoon & Co. to John Cornack, for one-fifth of five mining claims in Gibsonville, known as Read, Thompson & Rockwell's Claims—which paper is called Exhibit, No. 1, and is attested by one Wentworth. The objections were: 1. Its execution was not properly proved. 2. That it was not under seal.

It seems that the subscribing witness was shown to be out of the State, and his handwriting was proven. The execution by Huntoon & Co. was also proven. This was enough. There is nothing in the objection of a want of a seal, which goes to the admissibility of the paper, whatever might be the effect of it. The plaintiffs claimed to be in possession. It could not be improper, and might have been important, to show that they were in possession *bona fide*, under a claim of right, and with title to occupy and enjoy the property. Indeed, we are unable to see why, upon questions as to the occupancy of public mineral land, a transfer of the right of the occupant to the possession—which is about all his claim to it—is not as good for all purposes, to the vendee taking possession, when evidenced by an agreement, as by a deed.

3. The plaintiffs offered Exhibit, No. 2, being a like bill of sale from Kimball, Perry & Co. to the Simpson Mining Co. dated in 1856. One Tabor was a subscribing witness. The plaintiffs proved the signature of Tabor, and the execution of the paper by the firm of Kimball, Perry & Co. The defendants showed that, after the institution of the suit, and near the time of the trial, Tabor was in the State, and no efforts seem to have been made to get his testimony. On this ground, the Appellant insists the bill of sale was not properly proved. We think the objection not good. We have been referred to no authority which holds to an exclusion of this secondary evidence, on the ground of a want of diligence in getting the proof of the absent subscribing witness before he departed the State; and the adoption of such a practice would not only make the rule uncertain, but lead to a great deal of unnecessary trouble. The proofs of the execution of papers are usually formal matters, and it would

be much better, probably, as a general rule, to simplify and facilitate the mode of proof than to restrict it.

4. The next objection is, that the claims in this bill should have been first identified. The bill itself refers to them sufficiently to show their general description, and if it required further proof to locate or define them, such proof is admissible for that purpose. We would not reverse because the Court refused to interfere with the plaintiffs' order of proof, no injury appearing to be done by such refusal—as, indeed, could scarcely be.

5. We have had more difficulty as to the fourth assignment of errors. This consists of the refusal of the Court to permit the defendant, on the cross-examination of the witness, Gerslin, to put the question, "Whose water was that you saw splashing over the flume?" The plaintiff had, in the examination in chief, asked the question, "Did you see water splashing over the flume?" And to this inquiry, an affirmative answer was given. The pertinency of the evidence is seen in the fact, that the action is brought to recover damages for the overflow or leakage of the water from the ditch, it falling upon, and injuring, the claims of the plaintiff; the gravamen of whose right to recover was the injury resulting from this cause, which he alleged was a negligent use of defendants' ditch. This negligence and damage were denied, and were put in issue by the pleadings; and the defendants, it seems, wished to show that this injury arose from the acts of others, for which they were not responsible. Whether the question propounded tended to that result with much directness or significance or not, it bore to some extent upon the inquiry. But, apart from this, it is contended that the question was within the legitimate bounds of a cross-examination. The plaintiff contends now, not that the question was not relevant, or the answer important, but that it was asked inopportunely. He argues that this was matter of defense, and that the defendant had not opened his case at the time the question was asked; and he quotes Greenleaf, Section 447, to this effect: "A party who has not opened his own case, will not be allowed to introduce it to the jury by cross-examining the witnesses of the adverse party; though, after opening it, he may cross-examine them for that purpose."

We do not think the Respondent can maintain his position.

In the first place, the right of cross-examination is one of the most important privileges pertaining to a trial of an issue of fact. It exists, and ought to exist, in great latitude, for it is the only effectual shield against perjury, and the only sure means of eliciting the whole truth. We are inclined to agree with the counsel for the Appellants, that Courts are apt to take too narrow a view of the rights of the examiner in such cases, and to give too extended a scope to the rule that a cross-examination is to be confined to the subject matter of the evidence in chief. Undoubtedly, the cross-examination cannot go beyond that matter; but it ought to be allowed a very free range within it. In order to this, the witness may be sifted as to every fact touching the matters as to which he testifies, so that his temper, leanings, relations to the parties, and the cause, his intelligence, the accuracy of his memory, his disposition to tell the truth, his means of knowledge, his general and particular acquaintance with the subject matter, may be fully tested. Much must be left to the discretion of the counsel upon this subject. When the witness testified to the breaking of the water over the flume, on cross-examination, everything was proper and germain in regard to the water, the quantity, the force, the quality, the times; and even the ownership, where the water came from, how it was conducted or let off, and who turned it in.

But the question was proper in another respect. The defendant would seem to be charged by this overflow; it was a mere denial, not new matter of defense, to show that this overflow was not occasioned by his acts or his negligence, but by the acts or negligence of another; for the defendants are only held by their own acts of negligence or commission. So that this matter was, at least, as much in rebuttal of plaintiff's case as setting up his own:

We do not understand the doctrine of Greenleaf to go further than this: that if the defendant sets up a defense not necessarily involved in the denial of the plaintiff's case, but consisting of new matter, that then the defendant must wait until after his opening before he offers proof of this new matter. But the rule is wholly different when all the defendant, on cross-examination, wishes to disprove, by the plaintiff's witness, is the very case that witness has made.

We cannot see clearly that the defendants were not injured by this error. They might not have been; but the rule is, that every error is *prima facie* an injury to the party against whom it is made, and it rests with the other party clearly to show, not that probably no hurt was done, but that none *could have been,* or was, done by the error.

We regret to be obliged to send this case back on so small a point, but so the law, as we read it, ordains.

Judgment reversed and cause remanded.