## OGDEN COMMISSION CO. v. R. CAMPBELL.

No. 4283.  Decided March 11, 1926.  Petition for Rehearing Denied
April 9, 1926.  (244 P. 1029.)

1. EVIDENCE—EVIDENCE OF CONTRACTS MADE BETWEEN PLAINTIFF
   AND OTHER PEACH GROWERS HELD TO BE WITHOUT PROBATIVE
   VALUE. In suit for price of peach baskets, in which defendant
   counterclaimed, alleging sale of peaches to plaintiff at guar-
   anteed price, evidence of contracts with other peach growers
   *held* to be without probative value, and inadmissible.

2. APPEAL AND ERROR—ERROR IN ADMITTING IRRELEVANT EVIDENCE
   HELD HARMLESS, WHERE PLAINTIFF WAS NOT INJURED IN SUB-
   STANTIAL RIGHT THEREBY. Where defendant alleged a contract
   with plaintiff for sale of peaches at named price per bushel,
   error in admitting evidence of contracts between plaintiff and
   other peach growers was harmless as not affecting plaintiff's
   substantial rights, where four of seven witnesses testified as to
   having made contracts identical with contract claimed by
   plaintiff, and none of them testified as to contract the same as
   that claimed by defendant.[1]
   Straup and Thurman, JJ., dissenting.

Appeal from District Court, Second District, Weber
County; *J. N. Kimball*, Judge.

Action by the Ogden Commission Company against R.
Campbell. Judgment for defendant on his counterclaim, and
plaintiff appeals.

AFFIRMED.

*John G. Willis*, of Ogden, for appellant.

*A. G. Horn*, of Ogden, for respondent.

---

[1] *Knowlton* v. *Thompson*, 218 P. 117, 62 Utah 142.
Corpus Juris-Cyc. References:
[1]  Evidence 22 C. J. p. 744 n. 39, 42; p. 748 n. 63; p. 749 n.
64, 65.
[2]  Appeal and Error 4CJ p. 969 n. 56.

CHERRY, J.

The plaintiff sued the defendant for $180.92 for the balance of an account for peach baskets sold and delivered and for money lent to defendant. The defendant put in a counterclaim alleging that he had sold and delivered 1,500 bushels of peaches to plaintiff upon the terms that plaintiff would pay him 75 cents per bushel therefor, and, "in the event that said peaches when sold would warrant same, the plaintiff would pay the defendant any additional sums for which said peaches would sell for over and above the costs of the baskets and the plaintiff's commission"; that plaintiff had delivered him peach baskets of the value of $395, and paid him $100 in money, and had "failed and refused to render any accounting of the sale of said peaches." Defendant prayed for judgment against the plaintiff for $630, with interest. The reply of plaintiff to the counterclaim was a general denial. A trial by jury resulted in a verdict for the defendant in the amount prayed for in his counterclaim, and from the judgment entered thereon plaintiff has appealed.

The only error assigned or complained of is the admission of certain evidence offered by defendant over the objection and exception of plaintiff.

It was admitted that the plaintiff had delivered the peach baskets to defendant, and had paid him $100 in money. It was also admitted that the defendant had delivered 1,500 bushels of peaches to plaintiff. The only issue in the case was the terms upon which the defendant delivered his peaches to the plaintiff; it being claimed by the plaintiff at the trial that they were delivered upon consignment to be sold on defendant's account. The defendant, in support of his contention, testified that the plaintiff offered to take his peaches "on consignment," but that he declined the offer, whereupon the plaintiff's manager stated:

"I can guarantee 75 cents a bushel, and I think I can get you 90 cents or $1; however, I will guarantee that they will net you 75 cents."

The defendant stated that he agreed to the proposal, and thereafter delivered 1,500 bushels of peaches to the plaintiff. The peaches were loaded in railroad cars at different stations and at different times. That other growers in the locality (naming seven witnesses who subsequently testified as to the fact) loaded peaches in the same cars with defendant and each other whereby the peaches delivered by the defendant were commingled with those delivered by other growers. The defendant then produced as witnesses four of the growers who had delivered peaches to the plaintiff and had loaded them in the same cars and at the same times and places as defendant, three of whom testified separately over the plaintiff's objection that he had sold his peaches to the plaintiff at 75 cents per bushel, and one of them testified, "Well, I consigned mine." The admission of the evidence of the three witnesses above referred to is the ground relied upon by the appellant for a reversal of the judgment.

On behalf of the plaintiff its manager testified that he agreed to take defendant's peaches "upon a strictly consigned basis," and did not guarantee 75 cents per bushel. He testified that he advanced $100 to defendant on the transaction, and that later "a statement as to where his peaches had gone and where they had been sold" was furnished to the defendant. The contents of the statement were not shown, and nothing was made to appear relating to the prices obtained for defendant's peaches or the net proceeds of the sales. The defendant denied receiving any statement or account at any time.

An employé of the plaintiff testified that she heard the defendant say that he had consigned his peaches, and the plaintiff produced three peach growers (from the number which defendant testified had loaded peaches at the same times and in the same cars with himself), each of whom testified that he had delivered his peaches to the plaintiff "on consignment."

Upon substantially the foregoing evidence the jury found for the defendant.

The question to be determined is whether the reception of

the evidence complained of by appellant affords grounds suf-
ficient to warrant a reversal of the judgment.

The cases are generally to the effect that contracts, or their
terms, in case of dispute, cannot be proved by evidence that
one of the parties has made other similar contracts with
other persons. 11 *Ency. Ev.* 780, 783. Professor Wigmore,
however, says that the evidence as a class is not inadmissible;
that there is merely a question in each instance of the pro-
bative value of the particular facts offered. 1 *Wigmore, Ev.*
§ 377 (3). And there is respectable authority for the propo-
sition that the admission or exclusion of such evidence is
within the discretion of the trial court, subject to review
only in case of abuse. 22 *C. J.* 744; *Bone* v. *Hayes,* 99 P. 172,
154 Cal. 759; *Wilkinson* v. *Dilenbeck,* 168 N. W. 115, 184
Iowa, 81. In the latter view the test of admissibility is the
degree of probability that the course pursued in one instance
would be followed in the other. The defendant's contract, as
testified to by himself, was a consignment contract with a
guarantee of 75 cents per bushel. The evidence objected to
was that three witnesses each sold his peach crop to the
plaintiff at 75 cents a bushel, which was a variation from
defendant's contract. And the defendant produced a fourth
witness who testified to a contract with the plaintiff
which differed from them all. In these circumstances
we have no hesitancy in saying that the evidence under
consideration was wholly without probative value, and that
it should have been excluded.

But it does not follow that the judgment must be reversed
for the error. The plaintiff produced three witnesses who
each testified that he disposed of his peach crop to plaintiff
"upon consignment." There was no dispute whatever as
to the terms upon which any of the third persons had dealt
with the plaintiff, or that the terms of their contracts differed
from each other and all differed from the contract asserted
by defendant. If any inference or presumption at all was
deducible from the contracts made with third persons, it
was in favor of the plaintiff's contention, because four of
the seven witnesses who testified upon the subject testified
to having made contracts identical with what the plaintiff

claimed was its contract with the defendant, and neither of the seven testified to a contract identical with the contract as claimed by defendant. We are unable to say from this record that the plaintiff was affected or injured in any substantial right by the error complained of. The verdict of the jury must have been the same had the evidence objected to been excluded. *Knowlton* v. *Thompson*, 218, P. 117, 62 Utah, 142.

Judgment affirmed.

GIDEON, C. J., and FRICK, J., concur.

THURMAN, J., dissents.

STRAUP, J.

I concur in the holding that the evidence was erroneously received; but I dissent from the holding that the error was harmless. Neither do I concur in the stated view as to the test of the admissibility or exclusion of such kind of evidence, nor in the stated reason why it was erroneously received.

I think the law on the subject is as stated in 11 *Ency. Ev.* p. 780:

"The cases are generally to the effect that no reasonable inference or presumption can be raised as to whether or not a party has made an agreement with one person from the fact, or the mode in which, he has made similar contracts with other persons. Transactions which fall within this class are termed in law res inter alios acta, and evidence thereof is universally rejected.

"Nor is it competent upon such an issue to resort to evidence of similar transactions between other persons.

"Where the contract sought to be enforced, however, is not an express contract, but is a contract implied from the conduct of the parties, necessarily, of course, circumstantial evidence is resorted to, and there are numerous cases in which evidence of similar transactions has been relevant and admissible.

"Where the question is as to the terms of an oral agreement, evidence of the terms of similar agreements with other persons is not admissible.

"Nor is evidence of the terms of other contracts between the same parties admissible upon such an issue."

The same doctrine is maintained in 1 *Elliot, Ev.* §§ 159, 160; *Jones, Ev.* §§ 140, 141, and by *Wigmore* in volume 1, § 377 (3), where he says that—

"The courts are generally inclined to exclude such evidence, and, in the majority of instances, properly."

The reason for excluding such evidence is stated by *Chamberlayne* in his work on Evidence, volume 4, §§ 3154 and 3160, to be a want of probative value, and because such evidence has a tendency to confuse and mislead the jury, divert their attention from the real proposition which they are called upon to determine, raise collateral issues, permit the jury to deal with a party's rights, not on the basis of what happened in the case, but on what occurred between others, and to take the party against whom the evidence is offered by surprise.

The defendant in effect alleged in his counterclaim that he sold his peaches to the plaintiff on consignment with a guaranty of at least 75 cents a bushel. Plaintiff denied that, and claimed that the transaction was a straight consignment without any guaranty. After the defendant had testified to the contract as alleged by him—an oral express contract without any ambiguity—he produced three witnesses, who, by counsel for defendant, were asked: "Upon what basis or terms was it that you made your sale and delivery" of peaches to the plaintiff? "What arrangement did you have with" the plaintiff "for the handling of your peach crop?" On what terms did you make your sales" to the plaintiff? And over plaintiff's objections such witnesses were permitted to answer: "I sold my peaches for 75 cents a bushel," "Why, they paid 75 cents a bushel," and "They gave me 75 cents a bushel." The defendant produced a fourth witness who testified that he sold his peaches on consignment. The plaintiff in rebuttal called three witnesses who testified that their peaches were delivered to the plaintiff on consignment without any guaranty.

In rendering the amount of verdict which was rendered in favor of the defendant on his counterclaim, the jury were required to find the terms of the contract, as alleged and testified to by the defendant, that the plaintiff had

guaranteed to pay him at least 75 cents a bushel for his peaches. The evidence so admitted over plaintiff's objections had a tendency to do harm. As is seen, the main issue—about the only issue—submitted to the jury for its determination was the terms of the contract between the plaintiff and the defendant; the defendant having testified that the terms were as alleged by him, and the plaintiff that the terms were a straight consignment without any guaranty. It is apparent that the defendant offered the evidence objected to by plaintiff to sustain his allegation and claim that the plaintiff had agreed to pay him at least 75 cents a bushel for his peaches. Such testimony was put in by the defendant to so influence the jury and to induce them to so find; and, after the jury had so found and rendered a verdict in his favor upon the basis that the plaintiff had agreed to pay him at least 75 cents a bushel for his peaches, it now seems rather difficult for the defendant to maintain that the evidence complained of did not influence such finding. The terms of the contract in such respect having been in dispute, not only by the pleadings but by the evidence as well, it may well be that the admitted testimony complained of was the inducing cause of the jury's finding that the terms of the contract were as alleged and testified to by the defendant. At any rate, I cannot see with any degree of certainty that the evidence did not so influence the result and the verdict. Looking at the verdict, and it being made to appear that the jury rendering it was required to find the terms of the contract as alleged and testified to by the defendant, I think it is made to appear that the evidence complained of in all probability did influence the verdict and accomplish the very purpose for which it was offered and admitted.

Judgments, of course, are not to be reversed for mere error or for error which does not affect the substantial rights of the parties. *Comp. Laws Utah* 1917, § 6622. That is but another way of saying that causes will not be reversed except for prejudicial error, which, long before the statute, was, and ever since has been, the rule in this and in other jurisdictions. But in 2 *Hayne, New Trial & App.* § 287, Revised Edition (1912), it is said:

"Where error is shown, injury is presumed unless the contrary appears affirmatively. No rule is better settled than this, it having been announced and acted upon from the earliest history of our Supreme Court to the present time."

Many cases are cited by the author to that effect. Among others, Mr. Justice Baldwin in the case of *Jackson* v. *Feather River Co.*, 14 Cal. 18, is quoted that—

"We cannot see clearly that the defendants were not injured by this error. They might not have been; but the rule is, that every error is prima facie an injury to the party against whom it is made, and it rests with the other party clearly to show, not that probably no hurt was done, but that none could have been, or was, done by the error."

The author also quotes the opinion of Mr. Justice Angellotti in the case of *Short* v. *Frink*, 90 P. 202, 151 Cal. 83, that—

"It is impossible for us to say to what extent this objectionable evidence influenced the jury in rendering their verdict. Its direct tendency was to prejudicially affect defendant by placing him in a most unfavorable light, and we must presume that it had that effect (citing a number of California cases). This error necessitates a reversal of the judgment."

In *State* v. *Cluff*, 158 P. 701, 48 Utah, 102, this court said:

"Some committed errors, prima facie, are not calculated to do harm. Hence no presumption of harmful effect is to be indulged. Nevertheless, the party against whom such errors are made may, by the record, demonstrate, if he can, that the rulings did result to his prejudice of some substantial right. On the other hand, error may be committed which, prima facie, is calculated to do harm and to affect substantial rights. From such error prejudice and harmful effect of such rights will be presumed until, by the record, it is demonstrated that the error did not have, or could not have had, such prejudicial or harmful effect."

To the same effect is the case of *State* v. *Brown*, 115 P. 994, 39 Utah, 158, Ann. Cas. 1913E, 1.

From the authorities the rule may be deduced that, if the nature and character of the evidence erroneously admitted is such as has a tendency, or is calculated or likely, to do harm and injuriously affect him against whom it is admitted, then prejudice and harmful effect will be presumed until, on the record, it affirmatively is made to appear that no harm or injury was done, or could have been done, by the error.

I think the evidence complained of here was calculated to

have, and did have, a direct tendency to injuriously affect the plaintiff in a substantial right, and that it is not affirmatively made to appear by the record that the error had no such harmful effect.

Because the plaintiff, after the rulings against it, put in evidence on the subject that in its dealings with others the transactions were but consignments without any guaranty did not cure the error nor render it harmless. *Short* v. *Frink,* supra.

It is stated that, since the three witnesses for the defendant did not testify that they consigned their peaches with a guaranty of 75 cents a bushel but sold them outright to the plaintiff for 75 cents a bushel, and one witness that he merely consigned his peaches to the plaintiff, the terms of their contracts were different from those of the defendant as alleged and testified to by him, and hence such evidence had no probative value, and ought to have been excluded, thereby impliedly inferring that, had such witnesses testified that they sold or consigned their peaches on terms as alleged and testified to by the defendant on which he sold or consigned his peaches, such evidence would have been admissible. In such case I think the evidence equally would have been inadmissible. In such respect I think it immaterial whether such contracts were similar or dissimilar to those as alleged and claimed by the defendant. The rule is that, where an express and unambiguous contract, whether oral or written, is relied on and made the basis of recovery, the terms of which are in dispute, it is neither relevant nor competent to show the terms of contracts made by one of the parties with others, regardless of whether such contracts are similar or dissimilar to the contract in question, except where questions of agency, intent, purpose, fraudulent schemes or plans, or scienter, etc., are involved, none of which elements being here present.

It is further stated as none of the testimony of the witnesses for the defendant, nor for the plaintiff, in such respect was disputed, and since four witnesses testified that they sold their peaches on consignment without any guaranty, and no witness testifying that he sold or consigned his peaches on terms on which it was claimed by the defendant that he sold

or consigned his peaches, that whatever inference was deducible from such testimony was in·favor of the plaintiff and against the defendant, and for that reason the evidence complained of had no harmful effect. To assert that requires us to compare and weigh the probative value and effect of the testimony of such respective witnesses. The point is such testimony was wholly irrelevant and incompetent, and was improperly put before the jury, and could not properly be considered by them for any purpose. Except as we look at the verdict as rendered, I do not see how it can be asserted in what way the jury considered or regarded such evidence. They were the exclusive judges of the facts and the weight to be given the testimony. As bearing on the issue of the disputed terms of the contract in question, they may have regarded the testimony of the three witnesses that they sold their peaches for 75 cents a bushel as of greater probative value or weight, and hence were thereby influenced in finding that, since the plaintiff purchased peaches from such witnesses at 75 cents a bushel at the same time and place, it was probable that the plaintiff had agreed to pay the defendant at least that much for his peaches and as was alleged by him. When evidence, as here, is admitted, and which has a direct tendency to do harm and relates to a material and essential issue—the main issue—before it may be said that such error did no substantial harm, it ought to be made to appear either by the verdict as rendered that no harm was done or by the record that the prevailing party was, in substance, entitled to a directed verdict as rendered, notwithstanding such erroneous admission of evidence. On the record no such position can successfully be maintained, for the plaintiff gave evidence to show that the terms of the contract between it and the defendant were that the defendant merely consigned his peaches to it without any guaranty. Thus the defendant, as to such issue, was not entitled to a directed verdict.

Nor can I see that the verdict would have been the same had the objectionable evidence been excluded. To assert that is, as I think, but conjecture.

I, therefore, am of the opinion that the judgment should be reversed and the cause remanded for a new trial.