297 P.2d 542

In the Matter of the ESTATE of Gertrude Louise RICHARDS, deceased.

Catherine R. HOWELL, Catherine S. Cress and Charles Richard Schneider, Respondents,

v.

Janet R. PARKER, Appellant,

Walker Bank & Trust Co., Executor.

No. 8452.

Supreme Court of Utah.

May 16, 1956.

Gustin, Richards & Mattsson, Salt Lake City, for appellant.

H. R. Waldo, Salt Lake City, White, Klute & White, Niles, Mich., Van Cott, Bagley, Cornwall & McCarthy, Salt Lake City, for respondents.

Ray, Rawlins, Jones & Henderson, Salt Lake City, for Walker Bank, executor.

CROCKETT, Justice.

Gertrude Louise Richards died in Salt Lake City on June 30, 1954, leaving an estate valued in excess of $330,000. By a will executed March 20, 1946, she made a number of minor bequests and devised the principal portion of her estate one-half to her sister, Mrs. Janet Parker, and the other half to her nieces, Mrs. Catherine Richards Howell and Mrs. Eleanor Richards Schneider, the children of her deceased brother. The will also provided that in the event Mrs. Schneider predeceased testatrix the Schneider children would succeed to the bequest of their mother. The latter died in 1953. By a purported codicil executed five days prior to her death, testatrix cancelled the bequests to Mrs. Howell and the Schneider children, giving them in lieu thereof only $10,000 to Mrs. Howell and $5,000 to each of the Schneiders; Mrs. Parker was named residuary legatee.

The will was admitted to probate without objection, but Mrs. Howell and the Schneider children (hereinafter called the contestants) objected to admission of the codicil. A jury found that at the time the codicil was executed testatrix lacked testamentary capacity. A judgment was entered in accordance with that finding. Mrs. Parker (the proponent) appeals from that verdict and judgment.

Appellant relies on two main points for reversal: First, that the jury was not properly instructed that the burden was upon the contestants to prove lack of testamentary capacity; second, that there was not sufficient evidence to sustain the verdict that testatrix lacked testamentary capacity.

■ Respondents do not question that the law as established in this jurisdiction is that the burden of showing lack of testamentary capacity was upon the contestants.[1] The trial judge refused to give proponent's requested instruction to that effect, indicating thereon that it was "given by implication." The court submitted the case to the jury by giving them only three interrogatories and directing them to place an "X" opposite the proposition with which they agreed.

"Proposition 1. Gertrude Louise Richards at the time of making the codicil dated June 25, 1954, was of sound and disposing mind. ( )

"Proposition 2. Gertrude Louise Richards at the time of making the codicil dated June 25, 1954, was not of sound and disposing mind. (X)

"Proposition 3. The evidence is so equally divided that the jurors cannot determine either Proposition 1 or Proposition 2. ( )"

Six of the eight jurors found in favor of Proposition 2.

■ The function of an instruction on burden of proof is to tell the jury how it should weigh the evidence. Where the evidence is so equally balanced that it is impossible to say on which side lies the greater probability of truth, or where the preponderance of the evidence is against the truth of a certain proposition, a verdict must be returned against the party who has the burden, because he has failed to show that his allegation is more convincing as to its truth, when weighed against the evidence opposed to it.[2] Thus, in the instant case, if the jurors had agreed with Proposition 3, that the evidence was equally balanced, the judgment would have been in favor of proponent, for a testator is presumed competent until the contrary is shown by the preponderance of the evidence.[3] However, the jury, by finding in accordance with Proposition 2 over Proposition 3 necessarily rejected the contention that the evidence was evenly divided and indicated that they believed that the greater weight of evidence lay in favor of lack of capacity. It would seem to have been

1. See In re Swan's Estate, 4 Utah 2d 277, 293 P.2d 682; In re Hanson's Will, 50 Utah 207. 167 P. 256; In re Van Alstine's Estate, 26 Utah 193, 72 P. 942. A number of authorities state the rule to be that the proponent has the ultimate burden. See IX Wigmore sec. 2500, 68 C.J. 444-448, Wills, secs. 43, 44, on the ground that testator's soundness of mind is an essential element of proponent's case. However, in view of the presumption of competency which continues with proponent throughout the case and which must be overcome by a preponderance of the evidence, our rule seems to be the more direct approach to the same result.

2. E. g., In re Buttar's Estate, Utah, 261 P.2d 171; Tremelling v. Southern Pac. R. Co., 51 Utah 189, 170 P. 80, 83.

3. See In re Swan's Estate, 4 Utah 2d 277, 293 P.2d 682 and authorities cited therein at note 3; Note 1, supra.

4. Rule 61, U.R.C.P.; Ogden Comm. Co. v. Campbell, 66 Utah 563, 244 P. 1029.

desirable to give the requested instruction for complete clarity of understanding by the jurors and certainly would not have been error to do so. Yet, a refusal to give an instruction cannot be the basis for reversal unless the jury was insufficiently advised of the issue they were to determine, or it appears that they would have been confused or misled to the prejudice of the person complaining thereof.[4] From the finding of the jurors, it seems clear that they believed that incompetency was proved by the greater weight of the evidence.

In considering the sufficiency of the evidence it is meet to first treat certain issues relating to its admissibility. A factual background is required: Testatrix was 78 years of age. She had been confined to a hospital from May 21, 1954 to the date of her death for treatment of uncontrolled diabetes. The disease was never brought under control during her stay in the hospital, and she fluctuated between diabetic coma and insulin shock. Her condition was aggravated by hardening of the arteries; a grossly enlarged heart that resulted in heart failure; she had fluid in the lungs and a shortness of breath that necessitated administration of oxygen during her stay in the hospital; suffered from a marked mineral deficiency, was debilitated by frequent nausea and vomiting and was incontinent. It was necessary to supply her food and liquid needs intravenously. Her condition continued to deteriorate during her confine-

ment and until her death on the 30th of June.

■ Proponent assigns as error the admission of the hospital records, claiming that they were incompetent because hearsay. This same issue was presented in Clayton v. Metropolitan Life Ins. Co.[5] In that case, although we affirmed the refusal of the trial court to admit the entire record because no proper foundation had been laid, we observed:

"Before such records can be admitted in the absence of statute, the offering party must show the necessity of admitting the records without requiring the person or several persons who made the records to testify. He must then show the custody from which the records were taken and that they were prepared in the due course of hospital work."

In the instant case there was adequate foundation from which the trial judge could find the records credible, reliable and hence, admissible. The medical records librarian testified that she was the custodian of the records, and that although she did not make the entries herself, she was familiar with them and that they were prepared in the ordinary course of hospital business.[6] An intern assigned to take care of testatrix supplemented her testimony, explaining both the nature and the regularity of the keeping of such records.

5. 96 Utah 331, 85 P.2d 819, 120 A.L.R. 1117.

6. See Northcrest, Inc. v. Walker Bank & Trust Co., Utah, 248 P.2d 692.

Both the Clayton case, supra, and State v. Davie,[7] which relied upon it, indicate our approval of modification of the old "shop book" rule. In the Davie case we approved the admission of records shown to have been kept in the regular course of business. Implicit from the holding of the Clayton case and the authorities there relied upon is that the regularity and routine of entering the medical data required by hospital records carry with them sufficient guarantees of credibility to render them worthy of consideration. There is an additional reason, although it is not necessarily controlling, why hospital records should be regarded as sufficiently trustworthy to be received in evidence: These records are relied upon for the treatment of patients and the preservation of human life. Any motive for falsifying them by doctors or the staff appears to be lacking. And further, the law now requires that such records be kept and any false or fraudulent entry therein is made a crime.[8] In such circumstances, and considering the unfortunate consequences that a contrary ruling would have on both hospital and judicial administration were every entrant to be called to explain his notations, we hold that the hospital records were properly admitted.

■ Another problem respecting the admission of evidence relates to questions put to Dr. Currier, a psychiatrist, who testified concerning testatrix' mental competency. He never saw her and his testimony, therefore, was necessarily based on hypothetical questions. The proponent argues that the doctor was permitted to base his testimony upon abstractions and conjectures which had no basis in evidence, particularly, that he used the opinions, inferences and conclusions of others set out in the hospital records. Our decision that such records were properly admitted largely disposes of the proponent's claim that the question consisted of abstractions and conjecture. It appears that the hypothetical question was not an unfair summary of the condition of testatrix as reflected by the hospital records supplemented by the testimony of the physicians who attended her. Concededly there was dispute as to whether some of these conditions actually existed, but this court has long recognized that where the facts are in dispute, hypothetical questions may be framed either upon all the facts of the case, or upon facts which fairly represent the theory of the party producing the expert.[9]

The remaining claim of error in regard to the admission of evidence is that Dr. Currier, the psychiatrist, was permitted to state that the deceased suffered from a men-

7. Utah, 240 P.2d 265.

8. S.L.U.1953, Ch. 42, § 5, subd. 5, now Sec. 26–15–58, U.C.A.1953.

9. E. g., Lindsay Land & Livestock Co. v. Smart Land & Livestock Co., 43 Utah 554, 137 P. 837; Mary Jane Stevens Co. v. First Nat. Bldg. Co., 89 Utah 456, 57 P.2d 1099. See McCormick, Evidence, Sec. 14, p. 31.

tal "senility," and to assume as part of his hypothesis that the testatrix was "senile," when there was no basis in the evidence therefor. There was foundation for this hypothesis both from the hospital records and from the testimony of Dr. Copeland, the intern who made the diagnosis when testatrix was admitted to the hospital. The difficulty arises because Dr. Copeland explained that

"* * * 'senility' * * * has a connotation of both physical and mental senility. In this regard I meant to imply from the word 'senile' just failure of her physical being."

Dr. Currier, on the other hand, defined "senile" as also

"* * * a mental condition which is characteristic of the latter decades of life * * * which is characterized by intellectual deterioration, that is, loss in thinking and reasoning power, with particular reference to losses of recent memory and with frequently various states of confusion."

Dr. Copeland admitted that senility included this mental condition and that it was his impression that testatrix was slow in her thinking processes, which would be some indication of the mental senility assumed by Dr. Currier.

It is further to be noted that the only objection proponent made to the hypothetical question at the trial was the generalized one that it misstated testatrix' physical condition, and that it did not include some known factors, without specifying what the claimed defects were. The rule is that in order to preserve the objection for review on appeal the objector must point out specifically what she claims was erroneously included or omitted,[10] which proponent failed to do.

Counsel further suggests that the answers of this expert were so uncertain and vague that they should not have been submitted to the jury, citing Moore v. Denver & R. G. W. R. Co.[11] This is an erroneous interpretation of that holding. That case recognized that the mere use of such words as "belief," "impression," "probability," or "possibility" did not render testimony inadmissible, but held that in the particular context the qualifying phrases rendered the testimony too insubstantial when standing alone to support the verdict.

Having thus determined that the evidence was properly admitted, we proceed to assay whether upon all of the evidence the finding of lack of testamentary capacity can be sustained. The proponent relied heavily upon the fact that both of the subscribing witnesses testified that in their opinion testa-

10. Mahany v. Kansas City R. Co., Mo., 254 S.W. 16, 29 A.L.R. 817; 3 Am.Jur., Appeal and Error, Sec. 358. To same effect generally see Culmer v. Clift, 14 Utah 286, 291, 47 P. 85, 3 Am.Jur., Appeal and Error, Sec. 265; McCormick, Evidence, Sec. 52.

11. 4 Utah 2d 255, 292 P.2d 849.

trix was in command of her faculties on the afternoon of June 25, 1954.

■ It is conceded that the uncontroverted testimony of eyewitnesses may not arbitrarily be disbelieved by the trier of the facts.[12] But it must also be recognized that a fact finder need not accept a fact as established merely because a witness so testified, if there is any circumstance which would render the testimony improbable or doubtful.[13]

■ First of all, in the instant case, it should be noted that the subscribing witnesses were not experts and their opinions were only those of lay persons and therefore should not be given undue weight.[14] Second, the witnesses have an interest in the outcome which always may be taken into consideration as a factor which may discount testimony.[15] This is not limited to where the witnesses are actual parties or have a direct pecuniary interest, but in ad-

dition, there may be the case—as here—where the witnesses (both connected with the executor, either as employees or counsel) have an interest by way of vindicating the propriety of their conduct. Such matters are of particular importance to consider under circumstances where those whose rights are affected were not present when events which later prove to be of critical importance transpired. They are left to accept the testimony of those who were present or to discredit it by showing adverse interest, inconsistencies, unreasonableness or other weaknesses therein. Our survey of the evidence must be with a view of determining whether contestants succeeded sufficiently to provide a reasonable basis on which the jury could believe that testatrix lacked the capacity to execute a codicil.

■ Since contestants prevailed below, all the evidence and every intendment and inference which may fairly be drawn there-

12. E. g., Leavitt v. Thurston, 38 Utah 351, 113 P. 77; Karren v. Blair, 63 Utah 344, 225 P. 1094. Compare: Kent v. Ogden, L. & I. Ry. Co., 50 Utah 328, 167 P. 666. (Plaintiff held bound by uncontradicted testimony of witnesses introduced by him.)

13. The more obvious instances when such testimony may be discounted include when it is contrary to physical facts, Perrin v. Union P. R. Co., 59 Utah 1, 201 P. 405, certiorari denied 257 U.S. 661, 42 S.Ct. 270, 66 L.Ed. 423; or is characterized by omissions, uncertainties, or self-contradictions, Miller v. Columbia Trust Co., 63 Utah 305, 225 P. 609; or is based on

ignorance, confusion or mistake, Jensen v. Logan City, 96 Utah 522, 88 P.2d 459, affirming 96 Utah 53, 83 P.2d 311; or where bias, prejudice, or interest in the outcome of the decision is shown, McGowan v. Denver & R. G. W. R. Co., Utah, 244 P.2d 628; Patterson v. Blair, Utah, 257 P.2d 944; Nichol v. Wall, Utah, 253 P.2d 355.

14. In re Hanson's Estate, 87 Utah 580, 52 P.2d 1103.

15. See McGowan v. Denver & R. G. W. R. R., Utah, 244 P.2d 628; Nichol v. Wall, Utah, 253 P.2d 355.

from must be viewed in the light most favorable to them.[16] It cannot be doubted that because of her multifarious ailments testatrix was in the extremity of illness and was becoming progressively worse. She was fluctuating between diabetic coma and insulin shock; was often semi-comatose and was stuporous while the subscribing witnesses were there for the purpose of executing the codicil. Dr. Copeland came into the room to give an intravenous injection of chloride. Testatrix told him that she had some very important business to perform and wished that he would wait. But Dr. Copeland interrupted the conference, insisting that she do "what I ask you to do, and I want you to do it now." The doctor testified that the purpose of the feeding was to alleviate testatrix' stupor.

Dr. Currier described the effects of testatrix' ailments upon the ability of her brain to function, and concluded that in his opinion the collective result would be that

"* * * [such a person as testatrix] would be fighting a very difficult battle to maintain her clarity of thinking. I would expect that a person between diabetic acidosis and insulin shock would probably be in some state of confusion and perhaps disorientation, at least some of the time. How much would depend entirely upon the severity of swings from one side to the other, because that is what happens, with coma being the end result on either side for opposite reasons.

"I suppose you might say it is like a person walking along a very treacherous narrow pathway between a mountain precipice on one side and a roaring river on the other side. It is very difficult to stay on the path. If you deviate either way a little bit, you are likely to be in very serious trouble * * *.

"[And further] it would seem to me highly unlikely that a person in this medical situation would be in a state of mind to make any decision of lasting or serious importance."

Besides the evidence as to her mental state and her illness, the jury was doubtless influenced by the following circumstances which indicate at least some degree of mental confusion: Testatrix executed another codicil on June 21, 1954, in which she increased the bequests to Mrs. Howell by $10,000 and to the Schneider children by $5,000 each. This codicil was revoked, apparently upon the assumption by the employees of the executor that the testatrix intended to change the disposition of her property in the manner indicated by the June 25 codicil now in dispute. Such an instrument was submitted to testatrix on June 24, by Mr. Athol Rawlins, an attorney for executor. Upon observing her, he declined to act as a witness. His testimony was that he felt that she was in no condi-

16. Toomer's Estate v. Union P. R. Co., Utah, 239 P.2d 163.

tion to execute a codicil. It was the next day, June 25, that the questioned codicil was presented by others and was signed.

We remain cognizant of the fact that the law does not require that a person be particularly alert, nor need he have any special acumen in order to execute a will. He need not be able to operate a business or do other things which he might normally do in the prime of life. All that is required is that one have sufficient mental capacity to exercise judgment as to who are the natural objects of his bounty, to recall the character and extent of his property, to form some understandable plan for the disposition thereof, and to follow such a plan of one's own free will and volition.[17] But it is to be remembered that this is a case in which the jury has made a finding that the testatrix did not have such capacity, which finding will not be disturbed if there is any reasonable basis in the evidence to support it. Surveying all of the evidence as to her mental state and concerning the extremity of her illness we cannot say that there was no substantial evidence upon which to base a finding that Miss Richards lacked testamentary capacity.

Judgment affirmed. Costs to contestants.

McDONOUGH, C. J., and WADE, J., concur.

HENRIOD and WORTHEN, JJ., concur in result.

17. See In re Hanson's Estate, 87 Utah 580, 52 P.2d 1103, 1117.