## LEAVITT v. THURSTON.

No. 2141. Decided January 14, 1911 (113 Pac. 77).

1. BILLS AND NOTES—BONA FIDE HOLDERS—BURDEN OF PROOF. Under the express terms of Comp. Laws 1907, sec. 1611, when it appeared that a note was obtained by fraud, the burden was on the holder suing thereon to show that he acquired title as a holder in due course, as defined in section 1604. (Page 353.)

2. BILLS AND NOTES—BONA FIDE HOLDERS—BURDEN OF PROOF. The burden of one suing on a note defended on the ground of fraud to show that he was a holder in due course was not discharged by his testimony tending to show that fact; he being required to maintain the issue by a preponderance of all the evidence. (Page 353.)

3. EVIDENCE—BURDEN OF PROOF. The burden of proof to establish facts, as distinguished from the burden of first proceeding in a trial, does not shift and is unaffected by the evidence as the trial proceeds. (Page 354.)

4. TRIAL—QUESTION FOR JURY—CREDIBILITY OF WITNESSES—CONCLUSIVENESS OF TESTIMONY. A jury cannot arbitrarily reject testimony, but need not accept it when it is rendered improbable or doubtful by circumstances. (Page 355.)

5. BILLS AND NOTES—BONA FIDES OF HOLDER—JURY QUESTION. Whether one suing on a note took it for value and without notice of fraud in its inception held under the evidence a jury question. (Page 355.)

6. BILLS AND NOTES—BONA FIDES OF HOLDER—EFFECT OF INDORSEMENT. Under Comp. Laws 1907, sec. 1590, providing that an indorsement without recourse shall not impair negotiability, such indorsement cannot be regarded as evidence against an indorsee's holding in good faith. (Page 356.)

APPEAL from the District Court, Second District; *Hon. W. W. Maughan,* Judge.

Action by R. B. Leavitt against Ima Thurston.

Judgment for defendant. Plaintiff appeals.

REVERSED AND REMANDED.

*John A. Sneddon* for appellant.

*J. C. Walters* for respondent.

STRAUP, J.

This is a suit on a negotiable promissory note alleged to have been executed and delivered by the defendant to the Southern Missouri Jack Company, a corporation, and by it sold and transferred to the plaintiff. It was stipulated and agreed on the trial that the note was obtained by the company from the defendant by fraud and misrepresentations. The issue tried to the jury was as to whether the plaintiff was a holder in due course. A verdict was rendered in favor of the defendant. The plaintiff appeals.

The court, among other things, charged the jury that every holder is deemed prima facie to be a holder in due course; that by "holder in due course" is meant one who becomes a holder of the instrument before it is overdue, and who takes it in good faith and for value, and at the time it is negotiated has no notice of any infirmity in the instrument or defect in the title of the person negotiating it. The court further charged "that under the admitted facts in the case the Southern Missouri Jack Company, which transferred said note to the plaintiff, obtained the signature to said note by fraud, and that such admitted facts place the burden of proof upon the plaintiff to prove by a preponderance of the evidence that he is a holder in due course as above explained." Complaint is made on this instruction.

By our negotiable instrument statute (section 1604, Comp. Laws 1907), it is provided that: "A holder in due course is a holder who has taken the instrument under the following conditions: That the instrument is complete and regular upon its face; that he became the holder of it before it was overdue, and without notice that it had been previously dishonored, if such was the fact; that he took it in good faith and for value; that at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it." By section 1611

that: "Every holder is deemed prima facie to be a holder in due course; but when it is shown that the title of any person who has negotiated the instrument was defective, the burden is on the holder to prove that he or some person under whom he claims acquired the title as a holder in due course," etc. Under such a statute it is very clear that, when it was shown that the title of the company which negotiated the note to the plaintiff was defective, the burden was on the plaintiff to show that he acquired title as a holder in due course as defined in section 1604. Citation of authorities in support of a proposition so plainly declared by the statute would seem unnecessary. We, however, refer to section 168, p. 228, of Selover on Negotiable Instruments (2d Ed.), and the cases there cited; and especially refer to *Parsons v. Utica Cement Mfg. Co.,* 80 Conn. 58, 66 Atl. 1024; *Regester's Sons Co. v. Reed,* 185 Mass. 228, 70 N. E. 53; *Hodge v. Smith,* 130 Wis. 326, 110 N. W. 192, and *Bank v. Jordan,* 139 Iowa 499, 117 N. W. 758.

The appellant, however, urges that the burden, cast upon him when fraud was shown in the inception of the note, was discharged by the giving of his testimony that he purchased the note in good faith for value before maturity in the usual course of business and without notice of the fraud; and that the burden then shifted to the defendant to show that the plaintiff took the note with knowledge or notice of the fraud. Here counsel confuse the term, "burden of proof"—the *onus probandi*—which does not shift, with that of the "burden or duty of proceeding," or going forward, which in the course of the trial upon various facts may, and frequently does, shift from one party to the other. Whenever the existence of any fact or facts is necessary in order that a party may make out his case or establish a defense, the burden of proof —the *onus probandi*—is on such party to show the existence of such fact or facts. That burden does not shift and is unaffected by the evidence as the trial proceeds. After all the evidence is in, the one having the burden will lose unless the evidence bears more heavily in his

favor. Upon proof of fraud in the inception of the note, the statute undoubtedly casts on the holder, not only the mere duty or burden of proceeding or of going forward, but the burden of establishing the existence of facts showing that he, or some person under whom he claims, acquired title as a holder in due course, and as defined in section 1604, which includes the fact that at the time the note was negotiated he, or the person through whom he acquired title, had no notice of the fraud or infirmity. If evidence is given by him tending to show that he was such a holder in due course, that does not then shift the burden of proof to the defendant to establish the fact that he, or the person from whom he acquired title, had notice or knowledge of the fraud, or that no value was paid for the note, or that it was purchased overdue, but merely the duty of proceeding in the production of evidence if he desires to meet or overcome the effect or weight to be given the evidence so adduced by the holder. But, upon all the evidence on such issue, the holder will lose unless the evidence bears more heavily in his favor. We think the charge in this particular was right.

It is further urged that the plaintiff, after the admission of fraud in the inception of the note, having testified that he in good faith purchased the note before it was overdue, for value, and without notice of the fraud, or of any infirmity of the note, and no evidence on behalf of the defendant being introduced to contractdict the plaintiff, or refute his testimony, was entitled to a directed in his favor. Where a note was defended against on the ground of fraud in the inception of the note or fraudulently put into circulation, and where the plaintiff testified that he in the due course of business acquired the note in good faith before maturity for value and without notice, and the defendant introduced no testimony to contradict the plaintiff, it has been held that the defendant was entitled, nevertheless, to go to the jury on the question whether the plaintiff took the note for value and without notice of the fraud. (*Bank v. Fountain,* 148 N. C. 590, 62 S. E. 738; *Bank v. Iron Works,* 159 Mass.

158, 34 N. E. 93.) The facts of the case in hand do not require us to go to that extent, for the circumstances of the transaction under which the plaintiff acquired the note, as testified to by him, themselves cast suspicion upon the questions of his good faith, his innocence of the fraud, and the value paid by him for the note. While a jury may not arbitrarily disbelieve a witness and reject his testimony, neither are they bound to accept a fact as established merely because he testifies to it, when the circumstances render its existence, or the testimony of the witness, improbable or doubtful. We think that the evidence was such that the issue as to whether the plaintiff took the note for value and without notice of its infirmity was for the jury.

But the court gave an instruction also complained of which we think is erroneous and prejudicial to the plaintiff. The note was indorsed to the plaintiff "without recourse." The court instructed the jury: "While the indorsement without recourse is not of itself sufficient to prevent the plaintiff from being a holder in due course, nor to charge him with notice of any defense, and while the fact, if you find it to be a fact, that the plaintiff purchased the note for less than its face value, is not of itself sufficient to charge the plaintiff with notice of any defenses or existing equities against the payee, yet the jury may consider each of such facts, if you find them to be facts, in connection with all of the other evidence in the case, determining whether or not the action of the plaintiff in taking the said note was in good faith or in bad faith."

Again referring to the statute, we find it provides (section 1590) that:

"A qualified indorsement constitutes the indorser a mere assignor of the title to the instrument. It may be made by adding to the indorser's signature the words 'without recourse' or any words of similar import. Such an indorsement does not impair the negotiable character of the instrument."

In 4 Am. and Eng. Ency. Law (2d Ed.), 276, the rule is stated that:

"An indorsement 'without recourse' or other qualified indorsement does not in any respect affect the negotiability of the instrument, but simply qualifies the duties, obligations, and responsibilities of the indorser, resulting from the general principles of law. Nor does such indorsement cast any suspicion on the character of the paper, nor indicate, in any case, that the parties to it are conscious of any defect in the security, or that the indorsee does not take it on the credit of the other party or parties to the note. On the contrary, he takes it solely on their credit, and the indorser only shows thereby that he is unwilling to make himself responsible for the payment."

In 7 Cyc. 809, it is said that:

"An indorser may transfer title and at the same time, except so far as he is still chargeable with implied warranties as a seller of the paper, create no liability as indorser by indorsing a bill or note 'without recourse' or with words which are deemed to be of equivalent import; but the addition of these words will not affect the negotiability of the instrument and will not be a notice of defects to put a purchaser on his guard."

Cases are there cited supporting the texts. We especially refer to the case of *Hatch v. Barrett,* 34 Kan. 223, 8 Pac. 129, where the court said "that the indorsement qualified by the words 'without recourse' is not out of due course of trade and does not throw any suspicion upon the character of the paper," and to the case of *Stevenson v. O'Neal,* 71 Ill. 314, where it was said that "we do not doubt such an indorsement (without recourse) might aid in creating such a suspicion (some infirmity in the note), and would put the assignee on inquiry; but we have searched the authority establishing the proposition to the extent claimed for it (raising a suspicion of infirmity), but in vain." 6 The effect of such an indorsement is merely to qualify "the duties, obligations, and responsibilities of the indorser." We do not see how it can be considered as evidentiary of notice of any infirmity of the instrument. While the court charged the jury that it was not alone sufficient to establish such notice, the court, nevertheless, charged them that it was a proper fact or circumstance to be considered by them in determining whether the plaintiff took the note in good or

bad faith. From such an instruction the jury necessarily must have understood that plaintiff's taking the note with such an indorsement was some evidence properly to be considered by them as bearing on the question of his good faith and notice of the infirmity. We do not think it was. To hold that it was in in effect to hold that the negotiable character of the instrument is to that extent impaired.

Because of this error, the judgment of the court below is reversed, and the case remanded for a new trial. Costs to the appellant.

FRICK, C. J., and McCARTY, J., concur.