## STANDARD COAL CO. v. INDUSTRIAL COMMISSION OF UTAH et al.

No. 4364.   Decided June 5, 1926.   (247 P. 298)

1. MASTER AND SERVANT—SUPREME COURT MAY ONLY INQUIRE AS TO WHETHER THERE IS SUBSTANTIAL EVIDENCE SUPPORTING FINDING OF INDUSTRIAL COMMISSION. Supreme Court, in reviewing finding of Industrial Commission that workman's disability resulted from injury received in employment, may only inquire as to whether there is any substantial evidence supporting it, since in such event it is not assailable, and it is immaterial whether finding was unanimous or by majority of commission.[1]

2. MASTER AND SERVANT—EVIDENCE HELD TO JUSTIFY FINDING THAT WORKMAN'S DISABILITY WAS DUE TO INJURY AND NOT PRE-EXISTING DISEASES. Evidence held to justify finding of Industrial Commission that disability of workman was due to injury received in employment and not pre-existing diseases which were dormant at time of injury.

3. MASTER AND SERVANT—MEMBER OF INDUSTRIAL COMMISSION, DECIDING WHETHER WORKMAN'S DISABILITY IS RESULT OF INJURY, MAY CONSIDER PROBATIVE FORCE OF ALL EVIDENCE IN LIGHT OF ALL FACTS AND CIRCUMSTANCES OF CASE. Member of Industrial Commission, in deciding whether workman's disability is result of injury received in employment, may consider probative force of all evidence in accordance with his best judgment and in light of all facts and circumstances of case, and has right to base conclusions on what appears to him to be preponderance of evidence.

4. MASTER AND SERVANT. Decision as to whether workman's disability is result of injury received in employment should be based on evidence.

---

[1] *Milford Copper Co.* v. *Ind. Comm.*, 61 Utah, 37, 210 P. 993; *Hartford A. & I. Co.* v. *Ind. Comm.*, 64 Utah, 176, 228 P. 753.

Proceeding under the Workmen's Compensation Act by John Kaija, claimant, opposed by the Standard Coal Company, employer, wherein the Industrial Commission granted an award for claimant, and the employer seeks to review such proceedings.

AFFIRMED.

*Wilson, Loofbourow & Barnes,* of Salt Lake City, for plaintiff.

*Harvey H. Cluff,* Atty. Gen., and *J. Robert Robinson,* Asst. Atty. Gen., for the Commission.

*Willard Hanson* and *A. H. Hougaard,* both of Salt Lake City, for Kaija.

FRICK, J.

The plaintiff, upon application duly made, obtained the usual writ from this court to review the proceedings of the Industrial Commission of Utah, hereinafter called commission. The record certified up by the commission discloses that one John Kaija, hereinafter called applicant, made application to the commission for compensation for an alleged injury received by him on September 4, 1924, while he was enployed in plaintiff's coal mine. From the report of the attending physician it appears that the applicant was injured by a falling rock, which fell upon him while he was working in the mine and which fractured the thigh bone or femur of his right leg. The applicant was immediately taken to a hospital for treatment, and was there treated by Dr. Hosmer, the physician who made the report to which refer-

Corpus Juris-Cyc. References:
[1, 2]   Workmen's Compensation Acts C. J. p. 123 n. 43, 44 New.
[3]   Workmen's Compensation Acts C. J. p. 115 n. 37; p. 117 n. 52 New.
[4]   Workmen's Compensation Acts C. J. p. 115 n. 37; p. 123 n. 42.

ence has just been made. On March 21, 1925, Dr. Hosmer, in what is called a supplemental report, in answer to certain specific questions, reported as follows:

"Q. Has injury resulted in a permanent disability? A. No; not from the accident, but this man has complained a great deal; much more than one would expect from the extent of the injury. * * * So far as the fracture is concerned he is able to return to work now."

Under the subject "Remarks," the doctor further said:

"This man is apparently well so far as his fractured leg is concerned. However, in a general way he is not well. He has complained much about back pains. X-ray shows old spondylitis."

As we proceed further with this opinion the relevancy of the foregoing statements will more fully appear.

The record also shows that while, as the doctor said, the applicant had recovered from the injury resulting in a broken leg, yet that he was afflicted with pneumonia, and from that cause was helpless in the county hospital for a considerable time.

The record further discloses that the plaintiff paid the applicant, as compensation for the foregoing injury, the sum of $445.72, and in addition thereto paid medical and other expenses for him amounting to $326. The full amount paid to the applicant and as expenses aforesaid amounted to $771.72. The amount paid as aforesaid by the plaintiff was paid upon the assumption that the applicant had fully recovered from the injury, and therefore the plaintiff refused to make further payments, and the applicant made application to the commission for further or additional compensation. It is the latter application that is in question here.

The controlling question before the commission was whether the injury that the applicant received on September 4, 1924, in plaintiff's mine, caused the applicant's present disability, or whether he had fully recovered from that injury and the present disability was due to some disease or infection with which the applicant was afflicted prior to receiving the injury. The majority of the commission found and decided that the applicant's present condition and dis-

ability resulted from the injury received by him in plaintiff's coal mine, and awarded him further compensation, while in a minority opinion it is found that the applicant's present disability and condition was due to a disease or infection of long standing, which at the time of the injury was dormant or inactive. We use the term "present" as indicating the condition and disability at the time of the hearing.

The majority opinion contains about 1,600 words, while the dissenting opinion contains upwards of 2,500. Both the majority and the minority went into the facts rather extensively. The record also discloses that the application received more than ordinary attention, and much expert testimony was produced both in support of and in opposition to the application. Both the applicant and the plaintiff were represented by able counsel, and the facts relating to the injury and to applicant's physical condition, both before and after the injury, were fully gone into. It is vigorously contended on behalf of the plaintiff that there is no competent evidence in support of the majority decision and the award made pursuant thereto, while on behalf of the applicant it is insisted with equal vigor that there is abundant evidence in support of the majority decision and the award made pursuant thereto. The evidence is far too voluminous to permit of stating it in detail or even of stating it in condensed form. In view that plaintiff's counsel insist that the dissenting member of the commission has correctly reflected the evidence relating to the injury and the subsequent condition of the applicant, we take the liberty of here inserting that portion of the opinion in which the commissioner attempts to state a synopsis of the evidence. He says:

"The case of John Kaija presents the following picture: A man of large stature and apparently great strength; 41 years of age, inclined to be rotund; following hard manual labor all his life; to some extent addicted to intoxicants; for at least three years prior to September 4, 1924, suffering physical deterioration from the destructive process of a chronic and at times virulent mastoid infection; the poison thus fed into his system developing an arthritis of the lumbar spine, for which he was treated by Dr. Hubbard in 1922, at Standardville, Utah,

the pathology of the spine being revealed by a bony exudate completely bridging the second and third and partially bridging the third and fourth lumbar vertebrae; his being treated for his mastoid trouble by Doctors Hampton and Neher July 31st to August 13, 1924, at which time he gave a history of previous ear trouble, his being advised at that time that surgery would have to be resorted to to clear up the condition, his ignoring or disregarding this advice and shortly after entering the employ of the Standard Coal Company at Standardville, Utah, where on September 4, 1924, he was injured by falling coal. A slab several feet long, four or five feet wide, and from a few inches to nearly a foot in thickness fell, striking the car by which he was standing and his cap was knocked from his head. The glass of his lamp was broken, but the light was not extinguished. The slab broke into three pieces. Kaija was knocked to the floor and rendered unconscious for a short time. One piece of the slab rested partially on his abdomen and another piece on his right thigh, the piece on the right thigh causing a fracture of the right femur four or five inches above the knee. The force of the blow on the head, while sufficient to render the man temporarily unconscious, did not cause any laceration, neither was there any contusion or abrasion of importance, no blood being drawn.

"Kaija fell with his head and shoulders resting against the rib, and with his back and hips on the floor. His partner, Daniel Papp, either by himself or with the aid of another man, succeeded in removing the lump of coal from Kaija's body and dragging him to safety. He was put on a mine car and rushed to the hospital at Standardville, where he arrived about 40 minutes after the accident."

The majority state the facts somewhat more favorably to applicant. There is also must evidence to the effect that applicant suffered from an infection in his ear, and was treated for the same some time prior to the injury, and that X-ray photographs showed the condition of his spine as the same is outlined in the foregoing statement of the dissenting commissioner. It also appears from the record that the applicant received the injuries described in the manner there stated. It also appears that he made frequent complaint of pains in his back after he was injured in the mine.

The experts who testified at the hearing of the application disagreed with respect to the cause of applicant's present disability and condition. The only matter we are permitted to inquire into, however, is whether

there is any substantial evidence in the record in support of the decision of the majority that the applicant's present disability and condition is due to the injury he received in the mine. If that finding or conclusion finds support in the evidence, then the award made is not legally assailable. In view that it is urgently insisted that there is no substantial evidence in support of the award, we take the liberty of quoting excerpts from the testimony of one of the experts who testified upon that subject. We quote from the transcript of the evidence as certified up by the commission.

"Q. Can you determine from the pictures, Doctor, whether that arthritic condition there would be of such a nature as to cause Mr. Kaija's trouble?     A. Well, you would expect it to cause him some trouble.

"Q. In these arthritic cases is it not true that very often a man will go on with a condition of that kind for a great many years and not notice any difficulty?   A. Oh, yes; they frequently do that.

"Q. And then some intervening factor, a jar to the back or a bump or serious injury, would cause it to light up that condition and make the man sensitive to bumps to the back or sensitive to bending over or doing any kind of manual labor?  A. That is a common history in these arthritic cases."

The doctor, in answer to questions propounded to him by the several commissioners, further testified:

"Mr. Knerr: As I understand your testimony, Doctor Holbrook, it is substantially as follows: That prior to September 4, 1924, this man was afflicted with a chronic arthritis in the back? A. I think he had chronic arthritis.

"Q. And as a result of the injury sustained on September 4, 1924, he accelerated this pre-existing condition? A. He added a new condition to the old condition I would say; that is, the accident did.

"Q. Well did the accident have anything to do then by adding to or in accelerating the pre-existing chronic condition in the back? A. I think the arthritis has gone on, but I don't think it has gone on at any more rapid rate. There is more roughening and proliferation of the joints, but the accident was the exciting cause of bringing on the injury.

"Q. I want to get it clear and definite. As I understand it you claim the accident was the exciting cause of his present back condition? A. I think so.

"Mr. McShane: Q. He had a back condition there that was not disabling him at the time of the injury. You think the injury caused the disabling? A. I think a man can have a back condition before an injury, and it doesn't bother him; he can go on with his work, and he doesn't complain, or, if he does, he only complains a little.

"Q. Well; what I want to know is, can a man suffer from arthritis and go on with a big day's work without disability? A. Yes.

"Mr. Morris: Q. And can he continue with that without being disabled? A. He can, but he doesn't always do it.

"Q. It goes on and eventually disables him in time? A. They usually have some disability, but it doesn't incapacitate them from work.

"Mr. Knerr: Q. Would you be willing to say, or is it your opinion rather, that as a result of this injury as you understand it to be in a coal mine, it accelerated this pre-existing condition of chronic arthritis which placed him in his present disabling condition? A. I think it is, and if you turn the question around I believe you can say if he had received no injury to the present time he would be working today.

"Q. That's as I understand your testimony to be? A. Yes; from the facts as I understand them."

There is other evidence practically to the same effect, but we shall not burden this opinion with further excerpts therefrom. There, however, is also a great deal of testimony from other experts who arrived at a different conclusion. Indeed, as the writer sees it, the preponderance of the expert evidence is to the effect that the injury the applicant received in the mine was not the cause of his present disability and condition, but that such disability and condition were due to a disease or infection which existed prior to the injury received in the mine. If, therefore, we were permitted to weigh the evidence, and were required to determine the question from the record alone, the writer, at least, would feel justified in arriving at the conclusion that the greater weight of the evidence supports the conclusion of the dissenting commissioner rather than that of the majority. We, however, are permitted to examine into the evidence only for the purpose of determining whether or not there is some substantial evidence in support of the award. The rule just stated has so often been announced by this court that it is no longer open to question. It is not necessary to cite or to refer to the numerous cases where it

was so held. Moreover, the rule is precisely the same whether a decision or award is unanimous or whether it is only by a majority of the commission.

In this connection, we desire to state that we are not unmindful of the contention of the plaintiff's counsel that the conclusions of the dissenting commissioner are more reasonable and more in harmony with what they are pleased to call the more reliable expert evidence than is the conclusion of the majority. Counsel, however, either overlooked or ignored the all-important fact that the dissenting commissioner, in arriving at a conclusion, was not confined within the narrow limits that we are. He was at liberty to weigh and consider the probative force and effect of any part, or of the whole, evidence, in accordance with his views or best judgment, and in the light of all of the facts and circumstances as from the whole case they appeared to him, and he had a right to base his conclusions upon what appeared to him to be a preponderance of the evidence. We may indulge in no such latitude. We are limited to the sole inquiry of whether the decision or award of the majority, as made, is sustained or supported by some substantial, competent evidence. Here again the writer has no hesitancy in stating that in his judgment there is substantial competent evidence in this record, when considered in the light of the general rule laid down by this court, to justify the award. Then, again, the facts and circumstances of this case bring it within the rule laid down by this court in the following cases: *Milford Copper Co.* v. *Ind. Comm.*, 61 Utah, 37, 210 P. 993; *Hartford A. & I. Co.* v. *Ind. Comm.*, 64 Utah, 176, 228 P. 753. In both of those cases the question was whether the disability or condition of the applicant was attributable to the injury or to some antecedent or different cause. In both of those cases it was contended that the evidence did not justify the award. We, however, held, as we were required to do, that when the commission had resolved a doubt in favor of the applicant we were bound by the finding, if supported by some substantial evidence.

In this connection it should also be remembered that whether a present disability or condition is entirely or only partly due to a particular injury, or whether it is due to some prior or existing infection or disease, may be close and doubtful. All of such cases, must, however, be decided, and a conclusion one way or the other must be reached by those upon whom is cast the duty and responsibility of deciding. True it is that the conclusion or decision should be based upon the evidence. The difficulty, however, is to determine the effect of the evidence in a particular case. Where there is doubt on some question the trier of fact can only follow his conviction and best judgment, and the mere fact that others equally conscientious may arrive at a different or an opposite conclusion is by no means conclusive, and in many instances may not even be persuasive, that the dissenter is right. The record in this case shows that the commission was assisted by able counsel and by thoroughly competent medical and surgical experts, and, further, that the case received thorough and conscientious consideration, after which the commissioners disagreed respecting the facts. That a disagreement should arise in a case as close and complicated as this one is both natural and reasonable, and I am not at all prepared to say that if this court were charged with the duty or had the power of passing upon the facts that the different members thereof might not also disagree. Be that as it may, however, the all-important fact remains that the members of this court, even if they heard and saw the witnesses, are no more infallible in arriving at a conclusion upon the facts than is any other tribunal whose duty it is to pass upon them. When, however, we can only review the evidence from typewritten or printed transcsripts, then the established rule denying us the right to pass upon the weight or effect of the evidence certainly must be admitted to be sound; indeed its wisdom may well be said to be beyond question.

While, as hereinbefore stated, the expert evidence in this case is such that the commission could well have arrived at

a different conclusion, yet there are also circumstances in the case, in addition to the expert evidence, which justify the award of the majority of the commission. The award therefore should be and it accordingly is affirmed with costs.

GIDEON, C. J., and THURMAN, CHERRY, and STRAUP, JJ., concur.