## HAUSER v. INDUSTRIAL COMMISSION OF UTAH et al.

No. 4897.  Decided March 13, 1931.  (296 P. 780.)

*Badger, Rich & Rich,* of Salt Lake City, for plaintiff.

*Geo. P. Parker,* Atty. Gen., and *Bagley, Judd & Ray,* of Salt Lake City, for defendants.

CHERRY, C. J.

Jacob Hauser, an employee of Royal Baking Company, died after a surgical operation on September 7, 1927. His dependents, the plaintiff herein, contending that his death resulted from accident arising in the course of his employment, applied to the Industrial Commission for compensation on account of his death to be paid out of the state insurance fund by which the employer was insured. From an order denying compensation, the dependents have brought

the case here by writ of review, contending that the Industrial Commission arbitrarily and capriciously denied the plaintiff's claim in disregard of conclusive and uncontradicted evidence.

The questions of fact involved are whether the deceased sustained an injury by accident, and, if so, whether the injury resulted in his death. The Industrial Commission found against the dependents upon both questions.

Jacob Hauser, at the time of his death, was 58 years of age. For 6 or 7 years prior to his death he was employed by Royal Baking Company as a flour mixer in its bakery at Salt Lake City. A part of his duty was to carry bags of flour weighing 98 pounds each from one floor of the bakery to the next floor below down stairs or steps.

It is claimed by the plaintiff that, while carrying a bag of flour down the steps, the employee slipped and fell, and thereby sustained a traumatic hernia on his left side, necessitating a surgical operation from which he afterwards died.

There were two separate hearings of the claim. After the first hearing, compensation was denied. Later, upon stipulation a rehearing was granted. Upon the last hearing, evidence was taken on two separate occasions, and the hearing again adjourned for three weeks when the applicant produced further evidence. Compensation was again denied.

The evidence of accident was in brief as follows: The wife of the employee testified that her husband came home about August 4th and complained of pain, and said: "I hurt myself again on the left side, lifting heavy barrels"; that he went to see his doctor the next day; that he worked two or three days and quit; that he was operated on the Saturday morning after he was hurt. At the later hearing, this witness said about two weeks before he was operated on her husband came home and said he had had an accident; that, while carrying a sack of flour he had slipped on the steps and had a rupture on the left side, and that his old one was out again; that he showed her lumps in both groins and varicose veins on the left side; that he did not have lumps

on the left side before; and that he did not stop work or stay at home then.

A fellow employee testified that in August the employee told him that he had slipped on the top steps and hurt himself in the left leg; that he complained from day to day, and about three weeks later went to a hospital.

The employer's manager testified that on August 23d the employee, when called in the office, stated that about two weeks previously he had had an accident; that, while carrying a bag of flour down, he had felt a sharp sudden pain. He did not say he had slipped.

The employee's physician stated that the employee first came to see him on August 20, 1927, complaining of pain in his left groin, and told him that he had hurt himself handling heavy sacks of flour, and later said he had slipped on the stairs while at work.

At the last session of the rehearing, a witness named Balli, 64 years old, was produced for the first time. He testified he was working in the dough room at the bakery in August, 1927, had been employed there for 18 years; that Hauser, the deceased employee, brought flour to him from the upper floor; that, about the middle of August, Hauser, while carrying a sack of flour down the steps, slipped and fell, and let drop the sack and hurt himself in the side; that the witness helped him up; that he could not stand up alone; that his face was all over white; that he said he was hurt, and put his hand on his left groin; that he could not work any more because he was hurt too much; that he never came back to work; that he knew Hauser died, but did not attend the funeral. About a week or so after he died he told Mrs. Hauser how he fell.

Mrs. Hauser was recalled to the stand, and said that the first she knew that Balli had seen her husband fall down in the bakery was in the summer of 1928 when she met him on the street and he told her about it.

With respect to the injury, it appeared that 5 or 6 years prior to his death the employee had suffered from a hernia on his right side, at which time a surgical operation was performed to correct it. Two years before his death the hernia on the right side had recurred. On August 20, 1927, the employee went to his own physician, complaining of pain in his left groin. An examination disclosed a large mass of varicose veins in the left groin, a small incomplete hernia on the left side, and a recurrent hernia on the right side. He was taken to a hospital and on August 27th was operated by his own physician. This physician testified as a witness for the dependents, and stated that he first operated the left side and found a tender, fragile, thin sac, which was removed, and the wound closed in the usual way without complications or involvements. Then the right side was operated, where was found "a sac dense, white, tough, and adhesions in the neck of this hernia. It was down and could not easily be reduced. We found the appendix and a knuckle of gut adherent in the neck of the hernia. This made it necessary to remove these. It was very dense, and because of the adhesions of the appendix at this source, the appendix was also removed and it was closed in the ordinary way." On the third day thereafter, the patient developed symptoms of iliac paralysis, and his abdomen was again opened to flush the intestines. On September 7, 1927, the patient died from iliac paralysis, or paralysis of a portion of the small bowel. This medical witness further stated that the patient had chronic appendicitis; that the hernia on the left side was of recent origin and the probable result of a fall or strain; that he did not think the fall made the condition on the right side worse, but probably caused a more pronounced recurrence of the right hernia; that there was nothing to indicate that the right hernia was of recent traumatic origin.

Another physician who assisted in the operation of August 27th gave it as his opinion that the hernia on the left side was recent; that the operation on the left side was normal, with no complications, adhesions, or involvements, and noth-

ing to cause apprehension of death therefrom; that the operation for the hernia on the right side turned out to be a very serious and dangerous one; that in his opinion the death of the employee resulted, not from the operation on the left side, but from the complicated operation on the right side.

Another physician who had examined the patient after his supposed injury and witnessed a part of the operation stated that there was no indication that either hernia was of recent origin; that the hernia on the left side was very small, and the patient did not know it existed until it was discovered by a careful medical examination; that the varicose veins had existed for years; and that the patient's death resulted from the operation for appendicitis and adhesions.

Two other medical experts testified, and, in answer to hypothetical questions, gave their opinions, one, that the more probable cause of death was the operation on the right side, and the other, that there was nothing to show that death resulted from the operation on the left side, but that in his opinion it resulted wholly from the operation on the right side.

The question to be decided is whether upon the evidence recited the Industrial Commission was bound to find that the employee sustained injuries by accident which resulted in his death. The rule is settled by many decisions of this court that affirmative findings of fact made by the Industrial Commission on conflicting evidence will not be reviewed except to ascertain if the findings are supported by competent evidence. And, with respect to negative findings, we are committed to the rule that such will not be disturbed, unless it appears that the commission has arbitrarily or capriciously disregarded the uncontradicted evidence. *Kavalinakis* v. *Industrial Comm.*, 67 Utah 174, 246 P. 698.

Although the question is vigorously disputed, we may assume, without deciding, that the evidence conclusively established the fact that the employee slipped and fell while carry-

ing flour down the stairs as claimed by the plaintiff. That, however, is but one of the essential facts required to be established. To warrant an award of compensation, it was incumbent upon the dependents to prove that the accident caused injuries which resulted in the employee's death. And upon this subject we think it plain that the evidence was conflicting. That the employee previously sustained and was suffering from a severe hernia with adhesions on the right side, and with chronic appendicitis, was clearly proved. Whether the hernia on the left side was of recent origin or of long standing was a matter upon which the medical experts differed. One physician at least was of the positive opinion that it was not traumatic or recent. And it was generally agreed that the hernia on the left side was slight and incomplete. Added to this is the preponderance of medical opinion that the operation for the left hernia was not the cause of death, but that death resulted from the operation on the right side which, on account of old ailments, was complicated and dangerous.

There was no satisfactory proof that the recurrence of the old hernia and the necessity for surgical treatment thereof was occasioned by accident.

Upon the whole, we cannot say that the Industrial Commission, in finding that death by accident was not proved, acted arbitrarily or capriciously. On the other hand, its conclusion upon the facts was legitimate, and must be sustained.

Order affirmed.

FOLLAND, J., concurs.

STRAUP, J. (dissenting).

As I understand the prevailing opinion, a rule is announced that there is a distinction as to our power and duty in reviewing so-called "affirmative" and "negative" findings

of the commission. In such particular it in effect is stated that "affirmative" findings of the commission on evidence in conflict will not be reviewed, except to ascertain whether the findings are or are not supported by sufficient competent evidence; but that so-called "negative" findings will not be disturbed, unless it is made to appear that the commission arbitrarily or capriciously disregarded undisputed or uncontradicted evidence. The rule laid down by this court in more than fifty cases from 52 Utah down to the present time is that we are authorized and it is our duty to review challenged material findings and orders of the commission to ascertain whether they are or are not supported by sufficient or substantial competent evidence, or whether they are against or contrary to the undisputed or uncontradicted evidence. If the evidence respecting such findings or orders is in substantial conflict and upon which the commission properly could have made a finding or an order either way, we, of course, do not disturb or annul the finding or order. The rule adopted in such case is that a review of proceedings of the commission to determine whether its findings or orders are or are not sufficiently supported by evidence, or whether they are against and contrary to the undisputed or uncontradicted evidence, presents a question of law of which we and not the commission are the final adjudicator. An ultimate finding or an order may not be supported by sufficient competent evidence, or it may be against or contrary to the evidence, and yet may not have been the result of arbitrary or capricious conduct or action. It may be due to a misconception or misapplication of the evidence, or to an erroneous deduction from the evidence, without involving capricious or arbitrary action or conduct.

In law, arbitrary or capricious action or conduct is something done without adequate determining principles; depending on the will alone; not done or acting in accordance with reason or judgment; not governed by any fixed rules or standard; tyrannical; despotic. *Central of Ga. R. Co.* v. *Mote*, 131 Ga. 166, 62 S. E. 164; *People ex rel. Hultman* v.

*Gilchrist,* 114 Misc. Rep. 651, 188 N. Y. S. 61; *Boyle* v. *Rock Island Coal Mining Co.,* 125 Okl. 137, 256 P. 883; 4 C. J. 1476.

If on a record it is shown that a material finding or an order was the result of such action, it, of course, is to be disapproved. But to authorize or justify our interference it is not essential that the conduct or action of the commission be as flagrant as that.

This court has granted, and should grant, to the commission great liberality in considering and weighing testimony and giving effect to it; and, where there is a substantial conflict in the evidence as to a material or essential issue justifying a finding either way, its findings uniformly have been, and should be, upheld. But the power is not unlimited or unbounded. The law demands that the power be exercised reasonably and impartially within a sound discretion, and in accordance with, and governed by, standard rules and principles, and by giving due consideration to all the evidence, and not undue weight or undue consideration to a part of it to the exclusion of other portions of equal or greater importance. Whatever liberality is to be accorded to the commission in considering and weighing evidence, it is not, and ought not to be, greater than is granted or accorded a jury or to a judicial tribunal in law cases itself trying the facts and making findings with respect thereto. The rule in such case with respect to a judicial tribunal is stated in the case of *In re Yowell's Estate* (Utah) 285 P. 285. I think the same rule applies to the commission. To that effect is the case of *Rukavina* v. *Ind. Comm.,* 68 Utah 1, 248 P. 1103, 1105.

If by the statement in the prevailing opinion it is but meant that, when a material finding is against or is contrary to the undisputed or uncontradicted evidence, the finding shows an arbitrary or capricious disregard or a rejection of the evidence, and hence should be disapproved and an order based thereon annulled, the statement would not be objectionable. But it implies more, and announces a rule that a so-called negative finding on a material issue will not be

disturbed, though it is against the undisputed or uncontradicted evidence, unless it further is made to appear that the undisputed evidence was "arbitrarily or capriciously" disregarded or rejected by the commission. Where findings are made, they are required to be made on all of the material issues of the case. A finding that no accident occurred, or that no injury or death resulted therefrom, though negative in form, is just as much a finding on a material issue as is a finding that an accident did occur and that an injury and death resulted therefrom. In either case, when the finding is challenged, we are authorized, and it is our duty, to review the record to ascertain whether the finding is or is not sufficiently supported by evidence, or whether it is against or contrary to the undisputed or uncontradicted evidence; and a review of the one presents just as much a question of law as does the other. Where no evidence is given as to a material or essential averment or issue, a negative finding, of course, needs no evidence to support it, for in such case the finding is cast against the litigant who has the burden of proof to establish the averment or issue. Where, however, evidence is given as to such averment or issue, and a negative finding is made with respect thereto, and it is challenged, then we are justified and are required to review the record to ascertain whether the evidence with respect to such issue is or is not sufficient to support a finding for him who has the burden of proof to establish his averment, or whether the evidence with respect thereto is or is not in substantial conflict, or whether the finding is or is not against or contrary to the undisputed or uncontradicted evidence, and thus approve or disapprove the finding accordingly, without the requirement of a further showing that the commission acted arbitrarily or capriciously. The commission may not any more make an order refusing an award against undisputed competent evidence demanding an award than to grant an award without sufficient or substantial evidence to support it. If in the one case we are authorized and are required to review the evidence to ascertain whether a finding that an

accident arose out of or in the course of employment or whether an injury resulted therefrom is or is not sufficiently supported by the evidence, then I think it follows that we also are authorized and required to review the evidence to ascertain whether a finding that no accident arose or that no injury resulted therefrom is or is not sufficiently supported by evidence, or whether it is against or is contrary to the undisputed or uncontradicted evidence. An applicant has just as much right to complain and seek our review when an essential finding is made denying an award against undisputed evidence demanding an award as has the employer or insurance carrier to complain and seek our review when an order granting an award is made on essential findings not supported by sufficient competent evidence, without either being required to further, or in addition thereto, show that the commission acted arbitrarily or capriciously. In either case to grant relief it is enough to show that the essential finding or order complained of is not suppported by sufficient evidence or is against the undisputed evidence.

If here on the record the conclusion is reached that the evidence is in substantial conflict as to whether an accident had arisen out of or in the course of employment, or as to whether the deceased sustained an injury by reason thereof, or as to whether his death resulted from, or was attributable to, any such injury or to the accident, while on the record disagreeing with such conclusion as I do, yet I would not and do not disagree as to the application of the law based on such conclusion or determination; and, if the prevailing opinion proceeded alone on the theory of a substantial conflict in the evidence as to one or more of the essential findings, much of our disagreement as to the rule of law to be applied to the case would disappear. But, when a rule is laid down, as I think it is, that, since the applicants had the burden of proof, as they had, to establish that an accident arose out of or in the course of employment, that the deceased sustained an injury by reason thereof, and that his death resulted therefrom or was attributable thereto, and since all

such issues have been found against the applicants, they may not complain, though the findings with respect thereto are against and contrary to the undisputed or uncontradicted evidence, unless it further or in addition thereto is made to appear that the commission "arbitrarily or capriciously" rejected or disregarded the evidence, I cannot yield assent thereto. I think the correct rule applicable to the case is laid down in *Rukavina* v. *Industrial Comm.*, supra, and should be adhered to. The rule as there stated is a familiar rule. To that effect are also the cases cited and relied on by the respondent. *Quock Ting* v. *United States*, 140 U. S. 417, 11 S. Ct. 733, 851, 35 L. Ed. 501; *Bourda* v. *Jones*, 110 Wis. 52, 85 N. W. 671; *Blankman* v. *Vallejo*, 15 Cal. 639; *Earle* v. *Norfolk*, 36 N. J. Eq. 188. To that effect is also the case of *Leavitt* v. *Thurston*, 38 Utah 351, 113 P. 77. The rule also is well stated in *Hull* v. *Littauer*, 162 N. Y. 569, 57 N. E. 102. The respondent does not contend for or urge anything to the contrary.

The case of *Kavalinakis* v. *Industrial Comm.*, 67 Utah 174, 246 P. 698, 699, is cited in the prevailing opinion in support of the rule there announced. In the syllabus of that case it is stated that findings of fact of the commission are conclusive and cannot be disturbed, except upon clear and convincing evidence that the commission acted arbitrarily or capriciously. A similar statement is made in the opinion. In that connection it also is there stated that the findings and conclusions of the commission are "conclusive and not reviewable by this court." Of course, "the writer" of the opinion did not mean that findings and conclusions of the commission are not reviewable by this court for any purpose, or that on a review of proceedings of the commission all that may be inquired into are mere questions of jurisdiction. A contrary rule was laid down by the justice writing the opinion and concurred in by all members of the court in the case of *Twin Peaks Canning Co.* v. *Industrial Comm.*, 57 Utah 589, 196 P. 853, 856, 20 A. L. R. 872. He there says: "This court is now firmly committed to the doctrine that it

will examine into the evidence only to ascertain whether there is any substantial evidence in support of the findings of the Commission and whether it has either acted without or in excess of its jurisdiction. We refer to the following cases"— citing a half dozen or more prior Utah cases. The same rule was laid down by a number of other prior cases. The same rule was announced in a number of cases subsequent to the Kavalinakis Case. *Daly Mining Co.* v. *Industrial Comm.*, 67 Utah 483, 248 P. 125; *Strong* v. *Industrial Comm.*, 67 Utah 349, 247 P. 574; *Standard Coal Co.* v. *Industrial Comm.*, 67 Utah 292, 247 P. 298; and, in a number of other cases, the same justice writing the opinion in the Kavalinakis Case announced the same rule as was announced in the Twin Peaks Canning Co. Case, and at considerable length reviewed the evidence to show that it was sufficient or insufficient to support findings of the commission. The same is true in a number of subsequent cases, and other cases where this court reviewed and considered the evidence to determine its sufficiency to support findings of the commission, and affirmed or annulled the order in accordance with the conclusion reached on such review. When in such cases findings of the commission were approved and affirmed or disapproved and orders annulled, such rulings were made, not because it was found that the findings and the orders of the commission were capriciously or arbitrarily made or entered, but because they were either not supported by sufficient or substantial competent evidence or were against the evidence.

In the Kavalinakis Case the employee was killed in a mine explosion. When he entered upon his employment, he made a written statement that he had neither father nor mother living. The statement was not true. Both his father and mother were then alive. But his mother died several years before the death of the employee. The father, who was the applicant for compensation, survived him. The father lived in Greece, and at no time was a resident of this country. The employee left Greece and came to this country, where he resided a number of years before his death. The decision

turned on the question as to what, if any, contributions the deceased had made in support of his father. The father and the deceased not living together for some time, there was no presumption of dependency. There was some evidence to show that the deceased had sent some money to a brother in Greece with directions to give some of it to the father. Several depositions were taken in Greece. They showed that the deceased had made some contributions to his father. However, there were other facts and circumstances shown which were in conflict with such testimony. The commission held the father was not a dependent, and denied an award. The affirmance of the ruling well could have rested on a conflict in the evidence with respect to the question of dependency. That was all that was necessary in affirming the ruling of the commission. What in the opinion was stated beyond that was unnecessary and at variance with what had been decided by this court in many prior cases as well as in many subsequent cases. As to the result reached, the case is not in conflict with the case of *Rukavina* v. *Industrial Commission,* supra. Upon a review of the record in both the Kavalinakis Case and in the Rukavina Case, the conclusion was reached that there was a substantial conflict in the evidence as to the issue of dependency, and thus affirmed the order denying an award; hence what was stated in the Kavalinakis Case that findings of the commission are conclusive and cannot be disturbed except upon clear and convincing evidence that the commission acted arbitrarily or capriciously was gratuitous, and wholly unnecessary to the decision.

Now as to the merits of the cause. The deceased had been in the employe of the Royal Baking Company for a period of about six years prior to August 7, 1927, the time of the alleged accident. Four or five years prior to the accident, he was operated on for a hernia on the right side of the groin. After that, he went back to work for the company, and, according to all the evidence, including that of the employer, the deceased until the accident was a good workman, and

able to do and did his work satisfactorily. After the accident, he was unable to do so. In such particular the employer reported to the commission "that since Mr. Hauser sustained his injury (the injury in question) he has been unable to do any heavy lifting which made it necessary for us to employ another man to do the work involving heavy lifting such as Mr. Hauser did previous to his injury." And to that effect was also the testimony of the office manager of the employer. There is further evidence to show that, prior to the accident in question, the deceased, notwithstanding the old hernia or the effects thereof, was able to do and did heavy work in lifting, moving, and carrying heavy objects, and did his work satisfactorily, but that after the accident he was unable to do his work. The office manager in such respect testified that the deceased was one of the oldest employees, that he was faithful and capable, and always did his work satisfactorily until the accident in question.

There is no substantial dispute in the evidence that the deceased in the course of his employment met with an accident by slipping and falling while carrying a 98-pound sack of flour down a rather steep and slippery stairway. That was shown by a fellow workman who saw the deceased fall and helped him up and that the deceased made immediate complaints of pain in the region of the left groin. It also, without substantial dispute, is shown that, after the accident, the deceased suffered from a hernia on the left side of the groin, and that prior thereto he was not so afflicted. After the accident, he went back to work for several days, but was unable to perform it. He complained to the office manager of the employer of the accident and injury. On August 20th the deceased consulted his family physician who examined him. On the first examination the family physician did not discover the hernia on the left side. But on the same day the deceased was also examined by a physician employed by the claim adjuster of the state insurance fund who discovered that the deceased was suffering from a hernia on the left side. Both physicians found the recurrence

of the old hernia on the right side. On a further examination the family physician also discovered the hernia on the left side of the groin. The deceased, on August 27, 1927, was operated on by the family physician and by two other physicians who assisted him. He was operated on for both hernias at the same time and at the same place and under the same anesthetic. The physician employed by the claim adjuster also attended the operation as a witness, but took no part therein. The operating physicians first operated on the left hernia and then on the right. The physician employed by the claim adjuster departed before the operation on the left hernia was completed. The operation on the right hernia was more serious and complicated than the hernia on the left side because of adhesions and of involvements of the appendix, which in the operation were removed. For the first three or four days after the operation the deceased got along as ordinarily was to be expected, when it was found he was suffering from bowel extensions. The condition did not yield to usual treatment, and so on September 5th the deceased was further operated on, when it was discovered he was suffering from a paralysis of the ileum, from which he died on September 7th. It was admitted that the operating physicians were competent and skillful, and performed the operation skillfully and carefully, and no claim is made that the paralysis of the ileum was the result of any carelessness or unskillfulness of the operating physicians.

The operating physicians testified that the hernia on the left side was recent and required operation, and that the hernia could have been, and in their opinion was, the result of the deceased slipping and falling down stairs while carrying a sack of flour. The physician employed by the manager or adjuster of the state insurance fund testified that in his opinion the left hernia was not recent; that it existed probably for several months prior to the time of the alleged accident. Several physicians called by the employer and the manager or adjuster of the insurance fund upon hypothetical questions submitted to them testified that in their opinion

the cause of the paralysis of the ileum was from the operation of the right hernia and not from the operation of the left hernia, and that the operations on both hernias, though conducted at the same time and under the same anesthetic, were in their opinion in effect two separate operations. The operating physicians testified that the operation was but one operation, which required an operation on both hernias, and that the paralysis resulted from the operation of both, which was unavoidable. That in the judgment of the operating physicians the left hernia required surgical operation is not disputed. That such physicians were skilled and competent in such matters, and that the operation was skillfully and carefully performed also, is not disputed. The finding of the commission that the deceased met with no accident, did not fall on the stairway, or otherwise met with an accident, is, as I think, against the undisputed evidence. Likewise that no hernia was produced in the region of the left groin of the deceased upon such occasion and by accident is I think also against the evidence. On the record it is clearly shown that, prior to the alleged accident, the deceased had not suffered from a hernia on the left side or groin, but did after the accident. All that is, I think, clearly shown by the record. The only evidence to the contrary pointed to is the testimony of the physician employed by the manager or adjuster of the insurance fund that in his opinion the hernia on the left side was not recent. The operating physicians testified it was. Now, in view of the record and of the direct evidence, I think such mere opinion as expressed by the physician employed by the insurance fund did not raise any substantial conflict upon such point.

The commission by its findings evidently accepted the theory of its physicians, who on hypothetical questions submitted to them testified that in their opinion the paralysis of the ileum was occasioned by the operation on the right and not on the left hernia; and on that made a finding that the death was the result, not of the operation on the left hernia, though it should be considered the left hernia was

caused by the accident, but from an operation on the right hernia, which the commission found was not produced by the accident. However, if on the record the deceased met with an accident by falling down the stairway which resulted in a hernia in the region of the left groin, which in the judgment of the operating physicians required surgical operation, and since an operation was performed on both hernias at one and the same time and under the same anesthetic, then I think it of no controlling importance whether the paralysis of the ileum was produced by the operation on the one hernia or on the other or on both, for in such case the operation was but a natural and direct sequence resulting from the accident and resulting injury. It without any substantial dispute was shown that the deceased prior to the alleged accident in question, had not suffered from the old hernia, or that it in any particular prevented him from satisfactorily doing his work, or from lifting or the like. It also as satisfactorily is shown that after the alleged accident the deceased was unable to do his work or to do heavy lifting. On the record, the conclusion is almost inevitable that the accident not only caused the hernia on the left groin, but also affected the hernia on the right side, at least lit it up, if it did not produce a recurrence of it. At any rate, the operating physicians found a condition of the right hernia requiring operation, and operated on it. The two hernias were closely related. Since the operating physicians admittedly were skilled and careful operators, and since it is not claimed that the deceased in any particular was negligent in employing them to do the operation, and if the deceased met with an accident producing a hernia on the left side requiring operation, I do not well see how the deceased or his dependents should be held responsible for the action of the physicians in the operation, even though the physicians may have erred in judgment in performing the operation on the right hernia, or even though they may have erred in judgment in at all operating on the deceased for either hernia. The deceased as a matter of course was required

to take the judgment of the operating physicians as to the necessity of an operation. He also was required to trust to their judgment as to the kind and manner of the operation to be performed. Thus, though it be assumed death may have been the result from the operation on the right hernia, still it was the result of an operation attributable to the accident resulting in injury which, as a primary cause, and without any independent or intervening cause, set in motion a train of events or a condition occasioning or producing the necessity of an operation, and thus whatever was the result of the operation must be attributable to the accident which set it in motion. *Gunnison Sugar Co. & United States Fidelity & Guaranty Co.* v. *Industrial Commission and William Duffin* (Utah) 275 P. 777; *Glennon's Case,* 236 Mass. 542, 128 N. E. 942; *Utilities Coal Co.* v. *Herr,* 76 Ind. App. 312, 132 N. E. 262.

There is another matter worthy of notice and which has a bearing on a review and consideration of the evidence adduced before the commission in the cause. When an application for compensation is made, the commission makes both the employer and his insurance carrier parties defendants, which under the Compensation Act may be done, and an award made runs against one or both, and may be collected from either. When the state is the insurance carrier, the act provides that an award shall be paid out of "The State Insurance Fund," a fund created for such purpose. Notwithstanding we in the case of *Ban & Karika Co.* v. *Ind. Comm.,* 67 Utah 301, 247 P. 490, held that "The State Insurance Fund" is not a corporation or a legal entity of any kind, that it is a mere fund or sum of money created for a particular purpose and deposited with the state treasurer who is a mere naked custodian, and may not any more than any other inanimate object sue or be sued, nevertheless the commission here made "The State Insurance Fund" with the employer a party defendant in the cause just as though it was suable as some sort of legal entity. The fund itself is under the exclusive management and control of the commission. It is

given power to make and it makes all contracts with respect thereto, including the issuing of all policies of insurance payable out of the fund. The commissioner has what is called a manager of the fund and a claim adjuster who are appointed by the commission and who are subject to the exclusive control and direction of the commission. It, among other things, is the duty of the manager and the claim adjuster to investigate all alleged claims for compensation payable out of "The State Insurance Fund" and to report the result of their investigation to the commission, and, if in their judgment the claim is unmeritorious, to resist its payment; and, where applications for compensation are made payable out of the state insurance fund, the commission employs, and here employed, counsel to represent "The State Insurance Fund" to resist payment of the claim. Counsel so employed also like the manager and claim adjuster are subject to the control and direction of the commission.

There were two hearings of the cause. At the first hearing neither the applicants nor the employer nor the state insurance fund was represented by counsel. The applicants appeared only in person, and the employer and the state insurance fund were represented by the manager of the fund who resisted payment of the claim. In the main, the chairman of the commission called and conducted the direct examination of the witnesses and the manager of the fund the cross-examination of them. At the second hearing, the applicants were represented by counsel, "The State Insurance Fund" by counsel employed by the commission, and who also represented the employer and who resisted payment of the claim, and the manager of the fund also appeared for "The State Insurance Fund" and for the employer, and also resisted payment of the claim. Thus making "The State Insurance Fund" a party defendant was in effect making the commission in name a party defendant. They in effect were one and the same thing. *Utah Delaware Mining Co.* v. *Ind. Comm.* (Utah) 289 P. 94. In such case and on a hearing and in determining a claim, the commission in effect acts

in a dual capacity; one as a litigant resisting the claim; the other as an adjudicator determining and adjudging it.

I refer to such proceedings, not to show that the manager or claim adjuster or counsel employed by the commission did anything unfair or improper, or that they did anything which it was not their full duty to do or that the commission itself did not act in good faith. Under the statute, it was the duty of the commission to hear the case notwithstanding the claim if an award was made was payable out of the state insurance fund, and it had no choice not to hear and adjudge the claim. It was the only tribunal who under the statute could hear and determine it. It likewise was the duty of the manager of the fund and of the claim adjuster and of counsel employed to represent the state insurance fund as well as the commission to resist the payment of any and all unmeritorious claims to be paid out of the state insurance fund and to fully protect the rights of the state in such particular.

I refer to such proceedings as I have only for the purpose of showing that, whenever a tribunal, whether a judge, court, board, or other body, sits in judgment in a cause or controversy in which it is either directly or indirectly interested, and where it employs counsel to resist the claim, it is but natural for it as triers of the facts to look with more or less favor to what is adduced or represented in harmony with its interests, and with more or less scrutiny or disfavor to what is adduced or represented against such interests or at least is apt to do so. I do not say such is the case in all instances, for there may be instances where a judge, court, board, or other body so situated, and being conscious of the situation, may be influenced to "lean backwards"; and it may be that in some instances the board may have made awards payable out of the state insurance fund when the making of them may have been doubtful or even unwarranted. But in such case, if the claimant was satisfied, no appeal or review would lie, without the direction or consent

of the commission, to review its action in the premises and to protect the rights of the state.

That such conditions or situation has a natural tendency and is calculated to affect and influence a consideration of evidence may not well be doubted; and for such and other reasons it is the general rule that no tribunal ought or is permitted to sit in judgment in any case or controversy in which it is either directly or indirectly interested. But, as heretofore indicated, it is not the fault of the commission that it in such cases so sits in judgment. Under the statute it is required to do so. Nevertheless, because the commission, in a case involving the state insurance fund over which it has the exclusive management and control and in effect is a contracting party every time it writes an insurance policy payable out of the state insurance fund, and whatever award is made is payable out of such fund, so is required to sit in judgment, demands, as I think, a closer scrutiny and consideration of its findings and of the evidence than in other cases where it is not so interested and not a party to the cause.

Here the principal witnesses, and about the only witnesses called by either the employer or by those representing the state insurance fund, were a physician employed by the manager of the fund, and who some time after the accident and before the hearing examined the deceased, and several other physicians also employed and compensated by the employer and by the commission, and who expressed opinions as heretofore indicated upon mere hypothetical questions as to the cause of death and gave testimony with respect to matters relating to hernias. On the record I think the evidence with respect to the material matters in controversy called for an award, and that the commission denied it largely on mere opinions, some of them merely speculative, as expressed by physicians called by those representing the state insurance fund and by giving undue weight to such opinions and not sufficient consideration to undisputed evidence of facts of equal and of greater importance.

I therefore am of the opinion that the order denying an award should be vacated and the cause remanded to the commission for further proceedings.

ELIAS HANSEN, J.

I concur in the conclusion reached in the prevailing opinion whereby the order of the Industrial Commission denying an award of compensation is affirmed. As I read the record in this case, there is a sharp conflict in the evidence, and under such circumstances we may not substitute our judgment for that of the commission. The rule is announced in the prevailing opinion that we may not disturb negative findings "unless it appears that the commission has arbitrarily or capriciously disregarded the uncontradicted evidence." In my opinion, the rule thus announced is too restrictive. If the commission arbitrarily or capriciously disregards the uncontradicted evidence in making its findings, whether negative or affirmative, it is within our power and becomes our duty to disapprove of such findings. But it does not follow that the converse is true; namely, that, unless the commission has arbitrarily or capriciously disregarded the uncontradicted evidence, we may not disturb a negative finding. The words "fantastic," "fanciful," "freakish," "whimsical," etc., are synonymous with the word "capricious." The word "arbitrary" means despotic, absolute in power, bound by no law, irresponsible, etc. Webster's New International Dictionary.

The Legislature has created the Industrial Commission and clothed it with the power and duty of hearing and determining certain classes of cases. Some of the powers and duties thus conferred on the commission are judicial. When judicial powers are conferred upon a tribunal, such tribunal, by whatever name it may be called, should exercise such powers according to established principles of judicial inquiry. I believe the correct rule applicable to our power and duty to review findings of fact made by the Industrial Commission is

and should be the same as is the rule applicable to our power and duty to review findings of fact in an action at law. In actions at law, as in cases heard before the Industrial Commission, we may not make findings of fact. If, however, it can be said that a finding made by the commission is so manifestly against the clear weight of the evidence as to indicate that such finding was not fairly or impartially considered by the commission, or if it clearly appears that the commission, when considering the evidence and in reaching a conclusion as to the facts, misconceived or misapplied the evidence, or was influenced by prejudice or bias, then in such case it becomes our duty to vacate such finding. A finding by the commission may not be able to withstand the test of such a rule, and yet such finding may not be so grossly unjust that it can be said to be fantastic, fanciful, freakish, whimsical, or despotic.

EPHRAIM HANSON, J.

I concur in the opinion written by the CHIEF JUSTICE affirming the order of the commission denying compensation to the plaintiff.

In reference to the testimony touching the question as to whether the deceased sustained an injury, there is, in my opinion, sufficient shown on the face of the record to contradict and thereby discredit such testimony to the extent that a finding of the commission against the applicant on that issue should in reason be sustained.

Though we assume there was an injury as asserted, it is by no means conclusively established that it was the approximate cause of decedent's death. The evidence going to this issue is so conflicting that the commission's findings in respect thereto must, of course, be regarded as conclusive upon us.

With respect to the rule announced by this court in the case of *Kavalinakis* v. *Industrial Comm.*, 67 Utah 174, 246 P. 698, and followed in the opinion of the CHIEF JUSTICE

to the effect that negative findings of the commission will not be disturbed by this court unless it appears that the commission had arbitrarily or capriciously disregarded uncontradicted competent evidence, as I view the situation, that feature is not necessarily before us on the facts of the case, and as to whether the rule should be approved and followed, or either overruled or modified, I express no opinion.